MASONIC BENEFIT ASSOCIATION OF STRINGER GRAND LODGE *v.* FIRST STATE BANK OF COLUMBUS.

[55 South. 408.]

1. LIMITATION OF ACTIONS. *Demand deposits. Waiver. Concealment of cause of action. Code 1906, sections 3097 and 3099. Estoppel.*

   A depositor in a bank cannot sue the bank for his funds so deposited until payment has been demanded and refused and such demand and refusal is necessary to set the statute of limitations in motion.

2. SAME.

   The demand of the depositor, however, may be waived by the bank. This may be done by the bank notifying the depositor that his claim will not be paid; and rendering him a statement of his account, showing the balance claimed by the bank to be due him is equivalent to notice that any claim for a sum in excess of that

amount will not be paid and as to such excess the statute would begin to run from the time of the rendition of such statement.

3. CODE 1906, *Section* 3109.   *Fraudulent concealment.*

Where a bank believing a forged endorsement to be genuine, paid a check to a person other than the drawer and delivered the cancelled check to the drawer as a voucher, Code 1906, section 3109, providing that "the fraudulent concealment of a right of action will postpone the running of the. statute of limitations," has no application, as there was no fraud or concealment on the part of the bank, and the statute of limitations commenced running from the time the bank rendered the drawer a statement of its account showing the check charged against it.

4. SAME.

In such a case, the six years' statute of limitations applies as provided by Code 1906, section 3097, and not the three years statute of limitation as provided by section 3099 of Code 1906, as the pass book, cancelled check and certificate of deposit are written evidence of the debt.

5. ESTOPPEL IN PAIS.   *Payment of forged paper.*

Where a bank pays a check drawn by a depositor to the wrong person, the endorsement having been forged and afterwards renders an account to the depositor in which the payment of such check is shown and the depositor receives the same without objection, he is not estopped from suing the bank, as estoppel *in pais* only operates in favor of one who, induced by the acts or representations of another, so changes his position that injury would result if the truth were known.

6. SAME.

Where the depositor neither by act nor representation, induced the bank to pay out money on a forged indorsement, the depositor is entitled to assume that his check, payable to order, will not be paid by the bank until it shall have assured itself that the necessary endorsement appearing thereon is genuine.

APPEAL from the circuit court of Lowndes county.
HON. JOHN L. BUCKLEY, Judge.

Suit by the Masonic Benefit Association of Stringer Grand Lodge against the First State Bank of Columbus. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*George B. Power* and *L. J. Winston,* for appellant.

The first proposition presented for consideration is plaintiff's demurrer to defendant's first plea which is the same proposition presented by defendant's demurrer to plaintiff's replication—and that is within what limitation does the action fall.

We contend that it comes within the six year statute —and the suit was filed within six years from the date of the payment of the check in question.

Certainly the contract between plaintiff and defendant, out of a breach of which the suit grew was one in writing; it was evidenced by the deposit tickets, the bank pass books given to and received from the defendant and the further fact that the claim is based upon the payment of a check which must have, of necessity, been in writing, and the charging of said check improperly to the account of plaintiff, thereby reducing improperly the balance due by defendant to plaintiff on account of its deposits, etc.

"In some jurisdictions an action by a depositor for the balance of his account, as evidenced by his bank pass book, is an action upon an evidence of indebtedness in writing, within the meaning of the statute of limitations, and barred within the period prescribed for such actions. On the other hand, however, it has been held that there is no limitation to an action against a bank to recover money deposited therein." 25 Cyc. of Law, pp. 1041, 1047.

Under the amended declaration, this is clearly an action by the plaintiff to recover the balance of its account, which account was not closed until November 14, 1904.

"Such a suit may be brought within ten years from the time the right of action accrued, where the debt is evidenced by a bank pass book or certificate of deposit, since these are written instruments on which an action

at law may be brought within ten years." *Palmer* v. *Woods,* 35 N. E. 1122.

Another view that would bring this case within the six year statute, is that all the circumstances make the transaction's between the parties an account stated, acquiesced in by the plaintiff through a mistake and through ignorance of certain facts which it was not in a position to discover at the time of its acquiescence; as the plaintiff was not presumed to know, and as it does not appear that it in fact knew the signature of the payee, it cannot be said that plaintiff was guilty of negligence in not discovering upon receiving its pass book the fact that the payee's name had been forged or improperly endorsed upon the check; it was the duty of the defendant to ascertain the genuineness of the endorsement and the plaintiff had a right to rely, in the absence of any circumstances arousing its suspicions, upon the faithful performance of its duty in that respect by the bank.

The second proposition is that, even if the action were one that came within the bar of the three year statute, the statute did not begin to run against the plaintiff until the filing of the suit against the plaintiff by the original payee of the check as that was the first information plaintiff had or could have had putting it on notice or inquiry regarding the endorsement on the check.

While the general rule is that the plaintiff's ignorance of the wrong committed or of his rights with respect thereto cannot be considered in determining when the statute begins to run a plain exception is made where the ignorance of the plaintiff is due to no fault or negligence of his own but to the peculiar circumstances of the case.

Certainly the facts set forth in the pleadings in the case at bar are amply sufficient to bring it well within the exception; the plaintiff unacquainted with the payee and therefore unacquainted with the payee's signature or handwriting, had absolutely no means of determining

the genuineness of the endorsement; according to law and to the custom prevailing in business circles, plaintiff had a perfect right to leave the defendant the obligation of passing upon the genuineness of the endorsement; that is one of the obligations that banks assume; that is one of the duties they undertake; plaintiff did not discover and had no means of discovering the improper endorsement, had no suspicion that the endorsement was improper and there were no facts or circumstances to put the plaintiff on inquiry until the filing of the suit by the original payee; plaintiff began this cause of action within three years from the filing of said suit and within three years from the time when plaintiff with all due diligence required of it could have learned of the improper endorsement and the improper payment of the check in question and the consequent improper charging of the amount thereof to plaintiff's account, thereby reducing plaintiff's balance.

"While no rule can be laid down that will cover every transaction between a bank and its depositor it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties and the established or known usages of banking business."

Certainly, in this case, plaintiff exercised all the diligence required by the circumstances, the relations of the parties and usages, etc.

The third proposition is that the plaintiff is barred by an estoppel *in pais* in that plaintiff failed or neglected to bring suit or institute any demand for the amount until such lapse of time as will preclude the defendant from making full proof of the actual untruthfulness of plaintiff's contention or from protecting itself against loss.

In the first place our court does not recognize the doctrine of laches short of the statutory bar.

Estoppel *in pais* only arises when manifest justice and equity as respects the rights of another require its application. *Madden* v. *Ry. Co.,* 66 Miss. 258.

The manifest justice and equity in the case at bar are with the appellant; it is the party who has suffered a wrong through no fault of its own.

Estoppel *in pais* operates only in favor of one who, induced by the acts or representations of another so changes his' situation that injury would result if the truth were known. *Hart* v. *Foundry & M. Co.,* 72 Miss. 809.

No acts or representations of the appellant induced the appellee to so change its situation as to sustain injury.

The appellee in improperly paying the check in question and in improperly charging the amount to appellant committed the first fault and thereby occasioned the loss sustained by plaintiff and the appellee having committed the first fault certainly owed a duty to appellant to discover the improper endorsement and having failed in that duty it cannot visit the consequences upon the appellant, an innocent depositor, who performed its full duty to the appellee and used all due diligence required of it; we submit that appellee is hardly in a position to envoke the doctrine of estoppel *in pais,* for, if the appellee had performed its full duty, apellant would have been able to protect itself against a second payment of the check in question; the only duty owing from appellant was to act with that ordinary diligence and care that prudent men generally bestow on such cases, in the examination of pass books, returned vouchers, etc., to detect any errors or mistakes; more than this, under the circumstances of this case, could not have been required. It has never been held that the examination by the depositor of his account must be so close and thorough as to exclude the possibility of any error being overlooked by him.

The court will observe that it is shown by the pleadings that appellant had no knowledge of the fact that the payee's name had been improperly endorsed until the suit was filed against it—very nearly four years after appellant had every reason to believe and, as a matter of fact, did believe that all the matters between it and the original payee had been fully settled; the plaintiff had settled it in the way that it had settled many others before and in the way that it settled many others afterwards, with checks drawn upon the defendant bank.

It was contended in the lower court and will probably be argued in this court that the bank acted in "perfect good faith" in this transaction and that its good faith should be its exemption.

"And the latter (the bank) cannot avoid liability for having paid out money on a forged endorsement by showing that it acter in good faith." Morse on Banks and Banking (4 Ed.), vol. 2, p. 847.

Besides, there was equally as much good faith on the part of the plaintiff and the first fault was committed by the defendant.

We assume, of course, that it is not necessary to cite authorities to this court on the general proposition that a bank is liable to a depositor where it pays out money on the check of a depositor where the signature of the payee has been forged; the principle is so generally recognized as to need no citation of special authorities.

"Money paid on a forged endorsement may be recovered at any time that the forgery is discovered." Morse on Banks & Banking (4 Ed.), vol. 2, p. 847.

"Even where the last endorsement is genuine, the bank is not relieved from the duty of looking to the genuineness or prior endorsements." Ib., p. 849.

The bank had every facility for informing itself as to the genuineness of the endorsement; it had the right to trace its genuineness back through all of the banks that had handled it; in fact, there was no obligation on the

part of the defendant bank to pay the check until it was satisfied that the endorsement of the payee's name was genuine; it owed a duty to the plaintiff to ascertain that fact; indeed, the facilities of the defendant for avoiding the payment of the check were greater than those of the plaintiff, for the plaintiff did not even know when the check came in; all of that was entrusted to the bank, in accordance with business custom and the plaintiff had a right to rely upon the bank to protect it in the payment of its checks.

"Whenever a check is made payable to order, the bank has an unquestionable right to assure itself of the genuineness of the order before making payment." Ib., p. 851.

Suppose when the check reached the defendant bank after having come back through the several banks that handled it and the defendant had called up the plaintiff and said: "We have your check for four hundred and twenty-five dollars in favor of Hannah Roberson, but we are a little doubtful about the genuineness of the endorsement," what would have been the probable and the very proper reply of the plaintiff? "Before you pay the check, you had better inform yourself and satisfy yourself; we know nothing more about the endorsement than you do; you have the facilities of ascertaining whether or not it is genuine and we have not; you can trace it back through your several correspondents. It is your business to know that the endorsement is genuine." That is what all of us say to the banks that handle our accounts; we feel absolutely secure in the protection afforded us; we do not feel we are called upon to be constantly looking out for forged endorsements on the checks that we send out and it is not reasonable that we should have to stand the loss if the bank we do business with should let one of our checks be paid on a forged endorsement, and then seek to charge the amount to our account.

"Now as to a forged endorsement, the bank cannot charge such a check against the depositor, if it pays it, and the situation is different as to the duty of the depositor. While he is under the duty of examining returned vouchers, he is not expected to discover forged endorsements." Zane on Banks & Banking, p. 266.

If the loss can be traced to the fault or negligence of either party, it shall be fixed upon him only who is at fault generally it is that where no fault or negligence is imputable the loss has been suffered to remain where the course of business has placed it. *Glouchester Bank* v. *Salem Bank,* 17 Mass. 42.

Certainly, in the case at bar, it is not difficult to trace the loss to the fault and negligence of the defendant bank and certainly, the loss should be fixed upon it and it should be made to bear it.

"Where a deposit of money is made in bank, the statute of limitations does not begin to run until after demand is made." Morse on Banks & Banking, vol. 1, p. 590.

In the case at bar, the demand was made unnecessary; the pass book had been balanced and the defendant claimed to have no funds of the plaintiff on hand.

We submit that the trial judge erred in overruling our demurrers to defendant's pleas; they should have been sustained; that he erred in sustaining defendant's demurrer to our replications; it should have been overruled; the case should have gone to trial upon the case made out in the declaration and the plea of the general issue. The case should now be reversed and sent back for further hearing and disposition.

*Wm. Baldwin,* for appellee.

The relation of a bank to its depositor while not that of a trustee of his funds but only that of a debtor and creditor, yet has some characteristics that vary the relation from that of an ordinary debtor and creditor.

The early cases seem to hold that the statute of limitation applied to it as any other debt, but this was a holding so wrong, so monstrous indeed, that the courts quickly abandoned it.

It is amazing that any court should have ever held that because a depositor let a bank keep his money until it was barred by the statute of limitation, that would bar it, had it been an ordinary debt that the depositor was barred, yet some of the courts held it. That holding, however, is now universally condemned.

The modern doctrine is that the bank holds the deposit until called for by the depositor. That the bank is presumed to hold the deposit until called for, and this presumption lasts until the bank notifies the depositor that it no longer holds it subject to his checks. *Dickinson* v. *Savings Bank,* 152 Mass. 49.

When this notification is made to the depositor of the bank then it becomes the duty of the depositor to act within the time named by law for the assertion of his rights and see if the bank is correct.

When the bank has notified the depositor that it no longer holds his money, but has paid it out on his check, surely that is all it can possibly do and it then becomes the duty of the depositor to act within the time prescribed by law to see if the assertion of the bank is true and that it has paid out his money on his check. This is common honesty and common sense, and it is submitted that it is the law (see Morse on Banking (4 Ed.) p. 590-591).

What do we find to be the facts of this case: This suit was brought in November, 1908. One Littlejohn kept an account with this defendant bank, in the name of R. D. Littlejohn, Treasurer, and on November 11th, 1902, issued his check on this defendant bank for four hundred and twenty-five dollars, which was paid promptly on presentation.

On the first day of January, 1903, a little under six years before this suit was brought, the defendant bank returned to Littlejohn this check of his for four hundred and twent-five dollars, marked paid, and gave to him a statement of his account, showing that the defendant bank no longer held this four hundred and twenty-five dollars for him, but had paid it out on his check.

That thereafter on the first days of February to October inclusive, this defendant bank gave each month its statement, showing in the balance presented by his account that the defendant bank had paid this check of four hundred and twenty-five dollars.

In October or November, 1903, five years before this suit was brought, Littlejohn dies, and never had this defendant bank one word from him that this check was wrongfully paid and this amount, four hundred and twenty-five dollars, wrongfully charged to his account.

Plaintiff then claims of defendant bank that the account standing in the name of R. D. Littlejohn, treasurer, was the funds of plaintiff, and calls for a statement of the amount due on that account.

On November 7th, 1903, five years before this suit was brought, the defendant bank gave to plaintiff a statement of the amount due on the account and plaintiff at once passed it to its account.

On November 14th, 1904, four years before this suit was brought, the plaintiff called for a statement of the amount due to plaintiff, and when the amount was furnished to plaintiff, it at once checked it out of defendant bank.

Each and every one of these statements always gave notice to all interested that the defendant bank no longer held that four hundred and twenty-five dollars, and yet it is claimed that the plaintiff had no notice of the fact that the four hundred and twenty-five dollars was charged against the fund, and that there was no duty

devolving upon plaintiff to see if the charge was wrongful.

It is submitted that the bare narration of the facts of this case, make the claim of plaintiff not only illegal, but that independent of the bar of the statute of three years, that it is so inequitable as not to be tolerated.

Counsel for appellant cites 25th Cyc. of Law, p. 1041, sec. 7, which reads as follows: "In some jurisdictions an action by a depositor for the balance of his account, as evidenced by his bank pass book, is an action upon the evidence of indebtedness in writing, within the meaning of the statute of limitations, and barred within the period prescribed for such actions. On the other hand, however, it has been held that there is no limitation to an action against a bank to recover money deposited therein."

It is submitted that counsel has failed to get the legal proposition here announced by the writer.

Its meaning (as admitted) is this, that had the plaintiff brought suit against the defendant bank for the amount shown to be due as evidenced by the pass book, or, as the author expresses it, "further balance of his account as evidenced by his bank pass book;" that in some jurisdictions, it would be held as an action upon an evidence of indebtedness in writing, etc.

This is entirely a different proposition from this suit. This suit is for the recovery of money, where the balance shown by the pass book shows that the money is not there.

And in the case of *Palmer* v. *Woods,* 35 N. E. 1122, relates to the same sort of case; that is, where the debt is evidenced by the pass book. The difference between the cases is this: In the case at bar, the pass book itself denies the debt, but shows in the balance brought forward that the bank has not got the depositor's money. This case, however, is upon a local statute.

Again counsel contends that the three years statute did not begin to run until appellant had learned that the payee of its check had not authorized its payment.

It is submitted that when the appellant learned from its pass book, that the bank had paid out four hundred and twenty-five dollars of its money on its check to Hannah Roberson, and had charged that amount against appellant's account, that this was all the notice that the bank could possibly give appellant, and that appellant ought within three years time to have discovered that the charge of four hundred and twenty-five dollars was wrongful and made its rights known in some way.

Counsel for appellant presents as a reason for the application of the six-year statute to this suit that it is upon account stated.

It is submitted that counsel is in error in this. This suit is not at all upon an account stated.

It may be conceded to be the law that the balancing of a bank book presents an account stated between the parties, the depositor and the bank. ,

That proposition of counsel might apply if the plaintiff was suing on the balance admitted to be due, for that is what a stated account means. But this suit presents no suit upon a stated account, but upon money expressly denied by the stated account.

And the three-year statute set up by the defendant bank reads that, "Actions on an open account, or stated account, not ackowledged in writing signed by the debtor, etc."

It is submitted that the balancing of the account in the depositor's bank book surely, most certainly, cannot be construed to be a stated account, acknowledged in writing and signed by the debtor as to money not admitted by the account to be due, but on the contrary shown to be not due.

Anderson, J., delivered the opinion of the court.

The appellant, the Masonic Benefit Association of Stringer Grand Lodge, sued appellee, the First Sate Bank of Columbus, in the circuit court of Lowndes county. There was a judgment in favor of appellee, from which appellant prosecutes this appeal.

The judgment appealed from was rendered alone on the pleadings. The declaration sets out these facts:

That one branch of the business of appellant is insuring the lives of its members; that the appellee is a banking corporation under the laws of this state, and engaged in business in the city of Columbus, Lowndes county. "That on the 11th day of November, 1902, and for some time prior thereto, plaintiff was a customer and depositor of and with the said defendant, and as such customer and depositor carried on deposit with the said defendant large sums of money, which said deposit was in the name of 'R. D. Littlejohn, Treasurer'; the said R. D. Littlejohn being a duly elected officer of said plaintiff, and as such having the custody and control of the funds of said plaintiff. That from time to time plaintiff, through the said R. D. Littleohn, its treasurer and duly authorized agent, made deposit of its funds with the said defendant, and from time to time plaintiff, through the said R. D. Littlejohn, withdraw from the custody of said defendant certain of its funds by means of checks and drafts signed 'R. D. Littlejohn, Treasurer.' That on the said 11th day of November, 1902, plaintiff then being a customer and depositor of the said defendant, and having funds to its credit with the said defendant largely in excess of the sum of four hundred and twenty-five dollars issued through its treasurer and duly authorized officer and agent, the said R. D. Littlejohn, its check for the sum of four hundred and twenty-five dollars in favor of Mrs. Hannah Roberson, payee. The said check was in the usual form, and was drawn on the account of plaintiff with said defendant, and was drawn

in favor of the payee for the purpose of paying to her the amount therein named as a part of the proceeds of the benefit certificate held by her deceased husband. That plaintiff attaches hereto, as a part of this declaration, a copy of said check, together with all the memoranda, indorsements, and notations made thereon, and said copy being filed in lieu of the original, which plaintiff is unable to file herewith, as the same is beyond the control of plaintiff, being attached to and forming a part of the court files in the case of *Hannah Roberson* v. *Masonic Benefit Association,* in the circuit court of the Second District of Tallahatchie county, Mississippi. That on the 20th day of November, 1902, as is evidenced by notations appearing on said check, to wit, 'Paid 11—20—02,' the said defendant paid said check, and thereupon charged the account of plaintiff with the amount thereon, to wit, the sum of four hundred and twenty-five dollars. That while said check was payable to Mrs. Hannah Roberson, and to none other, and payable to Mrs. Hannah Roberson only upon proper indorsements, the same was paid by the said defendant to another person than the said Mrs. Hannah Roberson, and when it had not been indorsed by the said Mrs. Hannah Roberson, the payee, either by herself or by any one else authorized by her so to do, and that the placing of her name on said check as an indorsement thereof was wholly unauthorized. That it was the duty of the said defendant, the First State Bank of Columbus, Mississippi, before paying the aforesaid check to ascertain the validity and genuineness of the indorsements appearing thereon, and that said defendant owed to this plaintiff the duty, obligation, and responsibility of ascertaining and knowing that the purported indorsement of said check by the said Mrs. Hannah Roberson was valid and genuine, and that, in its failure so to do, defendant paid said check at its peril. That on the 28th day of May, 1906, Hannah Roberson filed suit against this plaintiff to recover the

amount claimed by her to be due from this plaintiff to her on account of the aforesaid benefit certificate held by her husband, to satisfy a part of which amount so claimed to be due the aforesaid check was drawn on the defendant in favor of said Hannah Roberson. That on the trial of said cause it developed, and for the first time came to the knowledge of this plaintiff, that the signature and purported indorsement by the said Hannah Roberson was not her act. That said check had not in fact been indorsed by the said Hannah Roberson herself, or by any one authorized by her so to do. That the trial of said cause resulted in a judgment in favor of the said Hannah Roberson and against the said defendant for the sum of four hundred and twenty-five dollars, together with interest amounting to one hundred and six dollars and eleven cents, which said judgment was entered on January 9, 1907, in the circuit court of the Second District of Tallahatchie county, Mississippi. That plaintiff appealed from said judgment to the supreme court of the state of Mississippi, and said court, on April 27, 1908, affirmed the judgment of the lower court, and thereupon plaintiff, being compelled so to do, paid and satisfied the said judgment, together with all interest, damages, and costs. That, by reason of the negligent and wrongful act of the said defendant, First State Bank of Columbus, Mississippi, in failing to ascertain the validity and genuineness of the purported indorsement of said check, and by reason of the wrongful act of said defendant in paying the said check to some one other than the payee therein named, when the said check had not been properly indorsed by the payee therein named, and when in fact it had not been indorsed at all by the said payee, the purported indorsement being unauthorized, which it was the duty of the defendant to have discovered, and by reason of the wrongful action of the said defendant in charging to plaintiff's account the sum of four hundred and twenty-five dollars so paid

out by the said defendant, and in the payment of which said defendant wrongfully applied so much of the funds of plaintiff then on deposit with defendant to the credit of plaintiff, the said defendant, then and there owing to the said plaintiff certain obligations, duties, and responsibilities imposed by law and most wrongfully violated by defendant, was liable to plaintiff in the sum of four hundred and twenty-five dollars."

By leave of the court the declaration was amended as follows:

"That by reason of the negligent and wrongful act of said defendant, the First State Bank of Columbus, Mississippi, in failing to ascertain the validity and genuineness of the purported indorsement of said check, and by reason of the wrongful act of the said defendant in paying the said check to some one other than the payee therein named, when the said check had not been properly indorsed by the payee therein named, and when, in fact, it had not been indorsed at all by the said payee, the purported indorsement being unauthorized, which it was the duty of the defendant to have discovered, and by reason of the wrongful action of the said defendant in charging to plaintiff's account the sum of four hundred and twenty-five dollars so paid out by the said defendant, and in the payment of which said defendant wrongfully applied so much of the funds of plaintiff then on deposit with defendant to the credit of plaintiff, the said defendant, then and there owing to the said plaintiff certain obligations, duties, and responsibilities imposed by law and most wrongfully violated by defendant, was liable to plaintiff in the sum of four hundred and twenty-five dollars, and has ever since continued liable to the said plaintiff in the sum of four hundred and twenty-five dollars on account of the said deposits made by the plaintiff with defendant as hereinbefore set forth, which said sum was and is the balance due by defendant to plaintiff, and never has been checked against by plaintiff in the

hands of said defendant, or otherwise withdrawn by
plaintiff from the custody of the defendant.''

The appellee pleaded to this declaration the general
issue, with notice thereunder, and in addition three spe-
cial pleas. The first special plea sets up the bar of the
statute of limitations of three years; the second, ''estop-
pel *in pais;*'' and the third amounts merely to the gen-
eral issue. The special matter of which notice is given
under the general issue is as follows:

''And the said defendant, the First State Bank of
Columbus, Mississippi, here gives notice to the said
plaintiff that upon the trial of this cause it will offer
proof to the effect following, to wit: That on or many
years prior to the date of said check, to wit, November
11, 1902, one R. D. Littlejohn, now deceased, had kept an
account with the defendant bank in the name of 'R. D.
Littlejohn, Treasurer.' That upon the 20th day of No-
vember, 1902, there was presented to the defendant bank
a check for the sum of four hundred and twenty-five
dollars, payable to the said Hannah Roberson, and
signed, 'R. D. Littlejohn, Treasurer.' That said check
was duly indorsed, having the name of Mrs. Hannah
Roberson written on the back thereof. The defendant
bank promptly paid the check, as was its duty, and
charged the amount thereof to the account of R. D.
Littlejohn, Treasurer. That thereafter, on the 1st day
of January, 1903, this defendant, upon the application of
the said R. D. Littlejohn, treasurer of plaintiff, to fur-
nish him with a statement of his balance in defendant's
bank, did furnish to the said R. D. Littlejohn its state-
ment as to the balance there on January 1, 1903, to his
credit in defendant's bank, and that said stetement so
rendered on January 1, 1903, to the said R. D. Little-
john, treasurer, showed plainly upon its face that this
check had been paid as aforesaid, and the amount there-
of, to wit, four hundred and twenty-five dollars, duly
charged against said account. That thereafter, on the

1st days of February, March, April, May, June, July, August, September, and October of the year 1903, this defendant bank gave on each of these days, being nine times, a statement of his account with the said defendant bank, each and every statement showing in the balance brought forward the payment of said sum of four hundred and twenty-five dollars upon said check, and that this defendant bank had charged against said account the amount of said check, to wit, four hundred and twenty-five dollars. That in the month of October or November, 1903, the said R. D. Littlejohn died, and plaintiff, the Masonic Benefit Association, called upon defendant bank, stating that plaintiff was the owner of said account then standing in the name of R. D. Littlejohn, treasurer, and called upon defendant bank for a statement of the amount thereof. That on November 7, 1903, this defendant bank gave to said Masonic Benefit Association a statement of the account of R. D. Littlejohn, treasurer, in which said statement appeared, in the balance so presented, the payment of this check of four hundred and twenty-five dollars made to Hannah Roberson. That thus was the account of R. D. Littlejohn closed on the 7th day of November, 1903, when the said plaintiff took the said account and transferred it to its account with this defendant, and thereafter kept an account with this defendant bank in its own name until the 14th day of November, 1904. That on that day, November 14, 1904, said plaintiff, the Masonic Benefit Association, called for a statement as to what was due it by this defendant bank, and was on that date, November 14, 1904, furnished by this defendant with the amount that this defendant bank owed plaintiff. That on said date, November 14, 1904, the said plaintiff, the Masonic Benefit Association, drew out of this defendant bank all of said amount of said account so furnished it on its demand on that day as aforesaid, and has since

that time, to wit, November 14, 1904, had no deposit with this defendant.''

Appellant replied to appellee's special pleas as follows:

"Replication to First Plea. It is not true that the claim of said plaintiff against the said defendant is barred by section 3099 of the Code of Mississippi, because plaintiff says that the said claim is one based upon the contract in writing, evidenced by the deposit slip and the bank pass book given to and received from the said defendant, constituting the contract between plaintiff and defendant and the liability of defendant to plaintiff, and the further fact that the claim is based upon the payment by the defendant of a check which must have, of necessity, been in writing, and the charging of said check improperly to the account of said plaintiff with said defendant, thereby reducing improperly the balance due by defendant to plaintiff on account of said deposits, which said balance has never been checked against by plaintiff in the hands of the said defendant, or otherwise withdrawn by the plaintiff from the custody of said defendant.

"Second Replication to First Plea. It is not true that the claim of the plaintiff against the said defendant is barred by section 3099 of the Code of Mississippi, because plaintiff says that the action was commenced within three years from the time when plaintiff first learned of the improper payment by the said defendant of the said check, and of the improper charging of the said check to the account of the said plaintiff, thereby reducing the balance to plaintiff's credit with the said defendant, and that the said suit was brought within three years from the time when plaintiff, with all due diligence required of it, could have learned of said improper payment, of the consequent improper charging of the amount thereof, and because plaintiff says that no limitation began to run against it and in favor of the

said defendant until the discovery by the said plaintiff of the said improper payment and the consequent improper charge, or until it could with due diligence have learned of the said improper payment and the consequent improper charge.

"Replication to Second Plea. It is not true that plaintiff is barred by an estoppel *in pais* from bringing this suit, in that plaintiff failed and neglected to bring suit or institute any demand for said sum until such lapse of time as will preclude the defendant from making full proof of the actual untruthfulness of plaintiff's contention, or from protecting itself against loss, because it says that the defendant, in improperly paying the aforesaid check and in improperly charging the said check to this plaintiff, committed the first fault, and that such action on the part of the defendant is the cause of the loss sustained by the plaintiff, upon which the said suit is founded, and that the defendant, having committed the first fault, owed a duty to plaintiff to discover the improper indorsement of the aforesaid check, and, having failed in its duty, it cannot visit the consequences upon this plaintiff, an innocent depositor, who performed its full duty to the defendant and used all due diligence required of it, and because this plaintiff says that, if the said defendant had performed its duty to plaintiff, plaintiff would have been enabled to protect itself against a second payment of the aforesaid check and against the loss sustained thereby, on which said loss this suit is founded."

The replication to the third special plea is a mere denial of it.

To appellant's replication to appellee's first and second special pleas a demurrer was sustained, and, appellant declining to plead over, final judgment was entered dismissing the suit.

The check in question was drawn November 11, 1902, and paid by appellee November 20, 1902, and the first

bank statement showing payment of the check was made January 1, 1903. This suit was brought November 13, 1908; therefore within six years from the time of the payment of the check, but more than three years thereafter.

The questions presented for decision, which will be considered in the order hereinafter set out, are: (1) When did the statute of limitation begin to run against appellant's claim? (2) What statute of limitation applies—that of three years, or of six years? (3) Whether appellant, even though not barred by any statute of limitation, is estopped to maintain this suit?

1. A depositor in a bank cannot sue the bank for his funds so deposited until payment has been demanded and refused. His right of action does not accrue until such demand and refusal; and such demand and refusal to pay is necessary, in order to set the statute of limitation in motion. The demand by the depositor, however, may be waived by the bank. This may be done by the bank notifying the depositor that his claim will not be paid; and rendering him a statement of his account, showing the balance claimed by the bank to be due him, is equivalent to notice that any claim for a sum in excess of that amount will not be paid, and as to such excess the statute would begin to run from the time of the rendition of such statement. 1 Morse on Banks and Banking (4 Ed.), pp. 590, 591.

The contention that the statute did not begin to run until the discovery by appellant of the forged indorsement of the check is unsound. Section 3109, Code of 1906, has no application to this case. It provides: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered."

There was no fraud perpetrated or concealed on the part of appellee. It paid the check in good faith, believing the indorsement genuine. Neither the appellant nor the appellee were at fault in failing to discover the forged indorsement after the payment of the check. Appellee's failure to dicover the forgery at the time it was presented, resulting in its payment, made it liable to the party defrauded to the amount of the check; but after that the duty rested equally on appellant and appellee to discover the forgery, and appellant's opportunities for making the discovery were as good as appellee's, because appellant had in its possession the canceled check with the forged indorsement, which had been rendered to it as a voucher. The running of the statute was, therefore, not delayed to the time of the discovery by appellant of the forged indorsement. Our judgment is appellant's right of action accrued, and therefore the statute of limitation was set in motion against it, on January 1, 1903, on which date appellee rendered to appellant a statement of its account, showing this item of four hundred and twenty-five dollars charged against it. This suit was instituted November 13, 1908, within six years of the rendition of said account, and therefore, if the six-year statute applies, this cause is not barred.

2. Section 3099, Code of 1906, provides: "Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of the action accrued, and not after." And section 3097, Code of 1906, provides: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after." It is contended for appellant that the claim, for which suit is brought, does not rest in parol, but is a claim provable by writing, and therefore that the statute of limitation of six years applies, and not that of

three years; that the writing by which the claim is provable is appellant's bank pass book, its certificates of deposit, and the canceled check for four hundred and twenty-five dollars wrongfully paid by appellee on the forged indorsement.

*Washington* v. *Soria,* 73 Miss. 665, 19 South. 485, 55 Am. St. Rep. 555, was a suit by the vendor against the vendee for the unpaid purchase money of the land conveyed, based alone on the recitals in the deed of the deferred purchase-money payments; the deed being signed alone by the vendor, the vendee having signed no writing agreeing to make the payments. The vendee plead the statute of limitation of three years and of six years. On this question the court said: "We are of the opinion that the six and not the three-years statute applies. The action is not upon a contract provable by parol, but is one provable by a writing. Whether the action which might have been brought at law could have been on the promise contained in the deed, treating it as the deed of the defendant because of his acceptance, and the estoppel operating upon him to deny it to contain his written contract, as the decided weight of authority holds may be done, or whether, as is held by the Massachusetts courts, no action could have been maintained on the deed, but the plaintiff must have sued upon the promise implied by law from the acceptance of the deed by the defendant, is, we think, immaterial. In either event, the promise of the defendant, whether it be express or implied, is to perform a contract, the terms of which are written, and not unwritten. The promise to pay is implied by law, but it is a promise to perform a written and not an unwritten contract."

To the same effect is *Fowlkes* v. *Lee,* 84 Miss. 509, 36 South. 1036, 68 L. R. A. 925, where the court held that a recital of the consideration in a deed which had not been paid was a promise in writing by the grantee to pay the consideration, and therefore

a promise provable by writing, and barred by the statute of six years, and not that of three years. In the opinion in that case the court cites, to sustain its position, *Jassoy* v. *Horn*, 64 Ill. 379, which was an action of assumpsit, and the evidence of indebtedness relied on by the plaintiff was a deposit bank book, kept in the usual form. The bar of the five year statute, covering unwritten contracts, was pleaded. It was held that the account, evidenced by the bank book, was not barred until the lapse of sixteen years, the period of limitation covering written contracts. The court said: ''The entries in the book were made by the bankers, and they charged themselves with the money deposited. They constituted 'evidence of indebtedness in writing' within the meaning of the statute.'' This holding was approved by the subsequent case of *Schalucky* v. *Field,* 124 Ill. 617, 16 N. E. 904, 7 Am. St. Rep. 399.

*Cock* v. *Abernathy,* 77 Miss. 872, reported in 28 South. 18, where the facts are more fully set out than in the official report, was a suit by a principal against the estate of his attorney in fact for money collected by the latter for his principal, which he had failed to turn over in his lifetime. The only written evidence of the claim was a receipt for the money given by the attorney in fact to the party from whom it was collected. More than three years, but less than six had intervened between the date of this receipt and the suit. The court said: ''The claim was not barred by the statute of limitation of three years, because the liability of Roberson (the attorney in fact) is provable by a writing''—citing *Washington* v. *Soria, supra;* the writing referred to being the receipt given by the attorney in fact.

In 25 Cyc. 1041, the principle is stated thus: ''In some jurisdictions an action by a depositor for the balance of his account, as evidenced by his bank pass book, is an action upon an evidence of indebtedness in writing,

within the meaning of the statute of limitations, and barred within the period prescribed for such actions."

It is not necessary, as will be seen from the authorities above referred to, that the writing evidencing the contract be *signed* by the party sought to be charged. It is a contract in writing in the sense of the statute, if it is provable by writing; and it is not necessary that the writing itself shall contain an express promise to pay. It is sufficient if the promise to pay may be implied from the writing. In the case at bar, in order to raise the promise to pay by appellee, it is only necessary to resort to appellant's bank pass book and certificates of deposit, in connection with the canceled check in question, all of which are in writing. From the bank book and certificates there was an implied promise by appellee to return to appellant all funds deposited with it, not legally transferred by the latter by check or otherwise. We think clearly the statute of limitation of six years applies, and not that of three.

3. It is contended for appellee that appellant is estopped to maintain this suit, because of the fact that appellant made no objection to the numerous statements rendered it by appellee of its account, after the payment of the check in question, showing its charge against appellant. Estoppel *in pais* only operates in favor of one who, induced by the acts or representations of another, so changes his position that injury would result, if the truth were known. *Hart* v. *Foundry & M. Company*, 72 Miss. 809, 17 South. 769. There is no element of estoppel in this case. The appellant and appellee were equally ignorant of the forged indorsement of the check during the period these statements were being rendered. Appellant, neither by act nor representation, induced appellee to pay out the money on the forged indorsement. It is said in 2 Morse on Banks and Banking (4 Ed.) 846: "The depositor is entitled to assume that his check, payable to order, will not be paid by the bank

until it shall have assured itself that the necessary indorsements appearing thereon are genuine. Welsh's bookkeeper had charge of his bank books and of his produce. He made fictitious accounts of purchases, and got Welsh to sign checks for payment of the price, payable to the order of the customer from whom the alleged purchases were made. The bookkeeper forged the customer's indorsement and got the money. Welsh did not discover the fraud for some months, but gave prompt notice when he did. It was held that neither the deception upon him, nor his receiving the bank books and checks as voucers, precluded him from recovering of the bank. The person whose name is forged is not obliged to examine immediately to detect the forgery. It is sufficient if he notifies the bank when he discovers the forgery."          *Reversed and remanded.*