THE CITY OF NEW YORK, Appellant, v. FIDELITY TRUST COMPANY OF NEW YORK, Now Known as the MARINE MIDLAND TRUST COMPANY OF NEW YORK, Respondent, Appellant, Impleaded with THE TITLE GUARANTEE AND TRUST COMPANY, Respondent, and JEREMIAH H. AHERN, Defendant.

First Department, December 24, 1934.

*Alvin McKinley Sylvester* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*], for the plaintiff.

*Edgar M. Souza* of counsel [*Thomas Epstein* with him on the brief; *Cook, Nathan & Lehman*, attorneys], for the defendant Fidelity Trust Company of New York (now known as The Marine Midland Trust Company of New York).

*Maury M. Kotz* of counsel [*William J. McArthur*, attorney], for the defendant The Title Guarantee and Trust Company.

MARTIN, J. The city of New York brought this action to recover the sum of $1,005.74, the proceeds of eighteen checks drawn by it to the order of one Andrew J. Darby, a pensioner, who had been retired on October 25, 1918. The checks were drawn on the Coal and Iron National Bank, a city depository, and paid by the bank between March, 1920, and October, 1921.

The complaint alleges that the Coal and Iron National Bank thereafter was duly merged into and assumed the name of the Fidelity Trust Company of New York, now known as the Marine Midland Trust Company of New York. It also sets forth that the bank, without the order, knowledge or authority of the plaintiff, paid out the sum of $1,005.74 upon forged indorsements and that the plaintiff had duly demanded the return to it of the said sum, which demand was refused, to the damage of the plaintiff.

The Fidelity Trust Company of New York impleaded The Title Guarantee and Trust Company as a party defendant, alleging in its cross-complaint that the checks in question were presented to it by The Title Guarantee and Trust Company and were paid to that company; that each check was indorsed by that company, which also guaranteed all prior indorsements, and that, relying upon such indorsements and guaranties, the Fidelity Trust Company of New York paid the amounts of such checks to The Title Guarantee and Trust Company and demanded that if, in view of the foregoing, a judgment should be rendered in favor of the plaintiff against the Fidelity Trust Company of New York, the company be allowed to recover judgment against The Title Guarantee and Trust Company for the same amount.

The Title Guarantee and Trust Company thereafter obtained an order impleading Jeremiah H. Ahern as a party defendant, and in its cross-complaint alleged that it received the checks in question from Ahern and that they bore his indorsements and were credited to his account; that such indorsements by Ahern were guaranties of the prior indorsements, including that purporting to be the signature of the payee, Andrew J. Darby; that the indorsements of the checks by The Title Guarantee and Trust

Company and the collection of the proceeds were solely in reliance upon the indorsements and guaranties of Ahern. It then demanded that, in the event that a judgment was entered in favor of the defendant Fidelity Trust Company of New York against The Title Guarantee and Trust Company, the latter have judgment against the defendant Ahern for the same amount.

The Fidelity Trust Company of New York admitted in its answer that it had refused to pay the city the sum in question, but denied the conversion or misapplication by it of the money so paid, and by way of defense alleged (1) that the plaintiff's cause of action did not accrue within six years prior to the commencement of the suit; (2) that the city was informed of the death of Andrew J. Darby, the payee of the checks, but failed to give said defendant notice thereof, and that by reason of plaintiff's failure to notify the defendant of the fact of such forgeries it was estopped from maintaining the action; (3) that the city was estopped from maintaining the action by reason of the fact that it negligently failed to detect the forgery of the indorsements of said Darby, who was a retired city employee, and had been receiving a pension as such and whose true signature was on file with the plaintiff; (4) by way of partial defense the answer realleged the facts enumerated in the third defense.

The record discloses that Andrew J. Darby, the payee named in the checks in question, was retired on October 25, 1918, by resolution of the board of estimate and apportionment. He had been an assistant foreman in the department of water supply, gas and electricity, and when retired his annuity was fixed at $737.16, payable in monthly checks of $61.43 each. In accordance with instructions given by the pensioner, his monthly checks were sent to him at No. 142 Mountain avenue, Somerville, N. J., and during his lifetime were cashed by him. He died on April 4, 1920, and thereafter the eighteen checks, the proceeds of which are the subject of this litigation, were presented for payment, bearing forged indorsements. The first check bearing such forged indorsement was cashed by the Fidelity Trust Company of New York on May 4, 1920, and the last on October 11, 1921.

It was conceded that the various sums of money represented by the checks were charged by the Fidelity Trust Company of New York against the account of the city and that such amount had not been repaid to the city although a demand for such repayment was duly made by the city on August 20, 1927. This demand, in writing, is in the form of an affidavit by an actuary auditor of the department of finance, sworn to on August 20, 1927, and contains a statement that " deponent has been informed that said

Andrew J. Darby departed this life on April 4, 1920, but that no notice of said death was ever given by his next of kin or legal representatives to The City of New York." The city conceded that notice of Darby's death was filed by the undertaker with the department of health of the city of New York on or about April 6, 1920, and that no check-up was made between April 4, 1920, and September 30, 1921, to determine whether or not Darby was in fact living.

Pursuant to a stipulation entered into by the parties to this action, the testimony of Joseph J. Tanzola, assistant actuary auditor of the division of pensions, given in another action, was read into the record. He testified that pension checks were mailed out with the receipt for the subsequent check and when that receipt was returned, the signature thereon would be compared with the signature on the last receipt, and if the signatures agreed the check was automatically sent out with the next receipt. Only in case of discrepancy would an investigator be sent out to determine if the pensioner was still alive. The witness said that there were about 15,000 pensioners in the city, and that he sent out between 1,500 and 2,000 pension checks a month. He said that the proper policy of the plaintiff was to assume that a pensioner was still alive, unless something specific, indicative of a contrary situation, was brought to its attention.

Following a general check-up in the office, a doubt arose in Mr. Tanzola's mind that Darby was living, and he conducted an investigation. This witness said that he was not employed by the city at the time that the eighteen checks in question were sent out and that he did not know what practice was followed in verifying signatures; that the one described above was in vogue when he entered the department and had been for some time prior thereto.

The testimony of Thomas Trainor given on another trial was, by stipulation, read into this record. He testified that he was a personal friend of Darby, and that the latter died on April 4, 1920, and his death was not reported by the witness to any one in the department of water supply, gas and electricity, in which department the witness was employed. He said that it was not generally known among the employees of that department that Darby had died, he himself having learned of it from someone not connected with the department.

The city of New York conceded that the checks bearing the forged indorsements were returned to it with the bank's statement each month. The Title Guarantee and Trust Company conceded that all of the checks bore its guaranty and that it delivered

the checks to the Fidelity Trust Company of New York for collection and that the latter company paid The Title Guarantee and Trust Company the amounts thereof.

At the close of the plaintiff's case the court dismissed all the defenses with the exception of the defense of the Statute of Limitations. It sustained that defense and rendered judgment in favor of the defendants as above set forth.

The city of New York contends upon this appeal that its action did not arise until after its demand for repayment of the moneys on deposit with the bank was refused; that the Trial Term was in error in holding that the Statute of Limitations ran from the dates of the payment of the checks bearing the forged indorsements; that the city of New York was not required to constantly check over the records of the Surrogate's Court.

The appellant relies upon subdivision 2 of section 15 of the Civil Practice Act, which provides that " When there was a deposit of money not to be repaid at a fixed time but only upon a special demand, * * * the time must be computed from the demand."

The law governing this subject will be found in one of the leading cases on this proposition, where the statute was directly involved (*Bank of British North America* v. *Merchants' Nat. Bank of City of N. Y.,* 91 N. Y. 106), where the court said: " We are of opinion that the plaintiff's cause of action was not barred by the Statute of Limitations. The defendant had no specific moneys of the plaintiff in its possession, but became a debtor to the plaintiff for all moneys deposited with it by the plaintiff. The law is settled beyond dispute that the debt on account of the moneys so deposited does not become due until demand actually made, and that a depositor has no cause of action for such debt until after actual demand. * * *

" When the defendant paid the check upon the forged indorsement, it paid its own money, and discharged no part of its indebtedness to the plaintiff. It still remained indebted to the plaintiff for the sum of $17,500; and the plaintiff lost none of its rights by receiving, under a mistake as to the facts, the check as one properly paid and charged to its account by the defendant. When it discovered the mistake it had the right to repudiate the charge, return the check and claim payment of the sum really unpaid to it or upon its order. The defendant was bound to see to it at its peril that the indorsement of Mrs. Halpine was genuine; that it paid the check to one entitled to the payment thereof; and that it got good title to the check as a voucher, and the loss, as between it and the plaintiff, for a wrongful payment, must fall upon it."

The plaintiff in the present case, on August 20, 1927, made a demand upon the defendant bank for the payment to it of the money paid out on the forged indorsements. This demand, though timely, was not complied with. Numerous authorities hold that at that moment, for the first time, a cause of action accrued in favor of the depositor. This action, having been begun on April 18, 1929, was well within the statutory period.

The rule set forth is the only reasonable one to be applied to such cases. If the statute were to run as applied by the Trial Term, it might be that before the party owning the deposit knew anything about the forgeries, the claim would be barred. When we consider that the city has about 15,000 pensioners, it is obvious that it would take a large staff of employees to do the checking which the defendants say should have been done each month to avoid payments on forged checks. The cost of such a system would be prohibitive. The risk assumed in paying a forged check is on the one who pays, not on the maker of the check. There is no reason, therefore, for any such burden being cast upon the city of New York.

The wisdom of the rule of law that requires a demand before the Statute of Limitations begins to run is well illustrated by this litigation, otherwise a party whose money is paid out from time to time without his knowledge would be without a remedy. Payments by the bank upon forged indorsements afford no protection to the bank unless it can show negligence or plead and prove facts warranting the application of the principle of estoppel.

The Trial Term having erroneously held that the action was barred by the Statute of Limitations, the judgment against the city of New York and in favor of the Fidelity Trust Company of New York, and the judgment in favor of The Title Guarantee and Trust Company should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment so far as appealed from against the city of New York and in favor of the Fidelity Trust Company of New York, and the judgment so far as appealed from in favor of the Title Guarantee and Trust Company reversed and a new trial ordered, with costs to the plaintiff to abide the event.