113 So.2d 737 (1959)
R.J. EDGERLY and Elizabeth Edgerly, Appellants,
v.
Samuel SCHUYLER, Belle Schuyler, Ned Schuyler, Beatrice Schmukler and Louis Schmukler and Miami Beach First National Bank, a banking corporation organized under the Laws of the United States, Appellees.
No. 58-123.
District Court of Appeal of Florida. Third District.
June 26, 1959.
Rehearing Denied August 14, 1959.
*738 Anderson & Nadeau, Miami, for appellants.
Blackwell, Walker & Gray and Melvin T. Boyd, Miami, for appellees.
PEARSON, Judge.
The plaintiffs appeal from a summary final judgment for the defendant-bank. The plaintiffs first sued only the defendants, Samuel Schuyler and Belle Schuyler upon a promissory note for $20,000. The Schuylers answered and denied the execution of the note. It then was developed by discovery that the plaintiff had made previous loans to the Schuylers and that in the course of business the plaintiffs received in the mail a note purporting to be signed by these defendants-Schuylers, and a letter requesting that a check be mailed to Sam Schuyler at a certain address. Thereafter, plaintiffs drew such a check upon the defendant-bank and delivered the same as requested. The check was cashed, but defendants, Schuylers, identified the signature on the note and the endorsement on the check as a forgery. The plaintiffs moved for permission to file an amended complaint and to bring in the bank as a party defendant. The court granted the motion and the plaintiff filed an amended complaint in which the third count was against the bank. It was as follows:
"The plaintiff, R.J. Edgerly, in complaining against the Miami Beach First National Bank, a banking corporation organized under the laws of the United States, says that:
"1. The aforesaid note dated January 8, 1952, was mailed to the plaintiff at his residence in Albany, Georgia, and upon receipt of said note the plaintiff, R.J. Edgerly, drew his check on his account at the Miami Beach First National Bank payable to the order of Sam Schuyler. A photostatic copy of said check is attached hereto as Exhibit `C'.
"2. The Miami Beach First National Bank, upon an endorsement, charged the account of the plaintiff, R.J. Edgerly, with the sum of $20,000.00, and delivered to some person whose identity is unknown, a cashier's check issued by the Miami Beach First National Bank, payable to Sam Schuyler. The said cashier's check was thereafter presented for payment to the Mercantile National Bank of Miami Beach by some person unknown to the plaintiffs, and said cashier's check was duly honored and paid.
"3. When the aforementioned note dated January 8, 1952, was not paid, the plaintiffs instituted suit against the makers and the endorsers, and in said proceeding took the depositions of all of the individual defendants, with the *739 exception of Ned Schuyler. The defendants, Samuel Schuyler and Belle Schuyler, denied that they had executed said note as makers, and Samuel Schuyler denied that he had ever received, seen or endorsed the check drawn by the plaintiffs upon their account at the Miami Beach First National Bank, payable to the order of Sam Schuyler.
"4. The plaintiffs, upon such information and belief, allege that the Miami Beach First National Bank honored and paid said check on a forged endorsement. Plaintiffs have made demand that said bank credit their account with the sum of $20,000.00, which said bank has failed and refused to do.
"Wherefore, plaintiffs claim judgment of the Miami Beach First National Bank in the sum of $20,000.00, together with interest and costs."
The bank filed its answer setting up as a defense a general denial and as an affirmative defense, the failure of the appellant to give notice of a forged endorsement as required by statute,[1] and also, the failure of the appellants to commence their suit until after the running of the applicable statute of limitations.[2] The court, upon hearing, granted the bank's motion for summary judgment, and denied plaintiffs' motion to strike the affirmative defenses. The summary final judgment was correct if the facts revealed that the cause of action alleged was barred by either section 659.37, supra, or section 95.11, supra.
The appellants first advance the argument that neither of the above quoted sections are applicable to a forged endorsement because the Uniform Negotiable Instruments Act[3] makes its own provision for actions involving forged instruments, and that this special statute[4] in regard to *740 forged instruments supersedes the general statute of limitations. A reading of the cited section reveals no inconsistency between this section and the application of a pertinent statute of limitations. The section cited by appellants deals with the effect of, and enforceability of, negotiable instruments when a signature is forged, without reference to any time limitation for the bringing of an action. We must therefore reject the reasoning of the appellants upon this point. However we also must reject the contention of the appellees that appellants' failure to give notice of the forged endorsement within one year as required by statute[5] bars them from bringing this cause of action. This is not the case, for the statute in question, which relieves a bank from liability to a depositor for payment of a forged or raised check unless the depositor notifies the bank of the forgery or raising within one year after return of the voucher representing payment, is not applicable to forged endorsements.[6] It is also apparent that this statute promulgates a rule of substantive law and not of limitation within which an action must be brought. Thus a depositor under this statute must notify his bank within a year that his signature has been forged in order to hold the bank liable, but the depositor still has the right to bring suit at any time within the period fixed by the applicable statute of limitations.[7]
The appellants next contend that notwithstanding which statute of limitation is applicable, if any are, then the period specified could not begin to run until the forgery was discovered. This presents the question: When does a cause of action accrue to a depositor against his bank for the wrongful payment of a check upon a forged endorsement? Although by the common law and now by statute a bank depositor is under the duty of detecting forgeries of his own signatures from the returned vouchers, the same duty is not imposed upon a depositor to discover forged endorsements on his checks, since a drawer is not expected to know the signatures of the endorsers.[8] There can be no doubt but that the primary responsibility is upon the bank to detect a forgery of a payee's signature and that a bank paying a check upon the unauthorized endorsement of the payee becomes liable to the payee.[9] The same responsibility rests upon the bank in its relationship with its depositor.[10]
The case of Peppas v. Marshall & Ilsley Bank, 2 Wis.2d 144, 86 N.W.2d 27, follows a line of cases which hold that a statute of limitations starts to run against the depositor's cause of action, to recover the amount of the check bearing the forged endorsement, as of the date the bank renders its statement of the depositor showing the charging of the check to depositor's account. The reasoning for this view is that the act of a bank in returning to the depositor, as a cancelled voucher, a check bearing a forged endorsement, together with a statement showing the charging of the amount of such check to the depositor's account, is a denial of liability which dispenses with the necessity of a demand as a condition precedent for the depositor suing the bank to recover *741 the amount of such check.[11] To the contrary is City of New York v. Fidelity Trust Co., 243 App.Div. 46, 276 N.Y.S. 341, 345. This latter court gives as the basis for its decision the following:
"We are of opinion that the plaintiff's cause of action was not barred by the statute of limitations. The defendant had no specific moneys of the plaintiff in its possession, but became a debtor to the plaintiff for all moneys deposited with it by the plaintiff. The law is settled beyond dispute that the debt on account of the moneys so deposited does not become due until demand actually made, and that a depositor has no cause of action for such debt until after actual demand. * * *
"When the defendant paid the check upon the forged indorsement, it paid its own money, and discharged no part of its indebtedness to the plaintiff. It still remained indebted to the plaintiff for the sum of $17,500; and the plaintiff lost none of its rights by receiving, under a mistake as to the facts, the check as one properly paid and charged to its account by the defendant. When it discovered the mistake it had the right to repudiate the charge, return the check and claim payment of the sum really unpaid to it or upon its order."
It further reasoned as follows:
"If the statute were to run as applied by the Trial Term, it might be that before the party owning the deposit knew anything about the forgeries, the claim would be barred. * * *
"The wisdom of the rule of law that requires a demand before the statute of limitations begins to run is well illustrated by this litigation, otherwise a party whose money is paid out from time to time without his knowledge would be without a remedy. Payments by the bank upon forged indorsements afford no protection to the bank unless it can show negligence or plead and prove facts warranting the application of the principle of estoppel."
The reasoning of the New York court is that the period of the statute of limitations should run from the time the forgery is discovered or would have been discovered in the exercise of ordinary business care by the depositor, because only then does the depositor have notice of an invasion of his legal right.[12] We are in accord with the reason given but not with the conclusion that a formal demand by the depositor is necessary for the cause of action to accrue. Under such a holding the depositor might withhold demand after discovery and perpetuate his cause of action indefinitely. We hold that the period of the statute of limitations begins to run from the discovery of the forgery by the depositor unless it can be demonstrated to the satisfaction of the trier of fact that at an earlier time the depositor would have discovered the forgery if he had exercised ordinary business care. The determination of the time for the beginning of the period of the statute of limitations becomes a question of fact. This rule has the disadvantage that it may produce a different time in each case and thus add to the difficulty of its use. Yet it is the only rule ascertainable which can operate fairly in every case. Difficulty in determining a just application of law ought not be an argument against the *742 just application, unless the result is so cumbersome as to actually impede the administration of justice.
Although appellee contends that either § 95.11(3) or (4) is the pertinent general statute of limitations governing this action,[13] we conclude that the proper provision of the statute of limitations to be applied is § 95.11(5) (e), Fla. Stat., F.S.A. The complaint does not set forth an instrument in writing governing the deposit. The check is such an instrument. However, the action is not upon the check but arises because it is alleged that the bank acted improperly and used the check as a means of its improper action. Therefore, this action is based upon an implied contract to return the amount of money deposited in the bank by the depositor. Since the contract is not in writing the action is governed by the three year statute of limitations.[14] Under a certain factual situation a depositor may allege an express oral contract between himself and the bank, or under another, a written instrument setting forh the promise of the bank. In this last mentioned case section 95.11(3) would apply. A "deposit" as a banking transaction, denotes a contractual relation between the depositor and bank with the implied or express agreement on the part of the bank that the deposit will be paid out on the order of the depositor or returned to him upon demand.[15]
We therefore conclude that the trial judge erred in making his determination that the statute of limitations barred the action, because there was no evidence that the forgery was discovered or should have been discovered by the plaintiff before the period limited. The summary final judgment is therefore reversed and the cause remanded for further proceedings in accord with the views herein expressed.
Reversed and remanded.
CARROLL, CHAS., C.J., and HORTON, J., concur.
NOTES
[1] Section 659.37, Fla. Stat., F.S.A., provides as follows:

"Liability of bank for amount paid on forged or raised checks. No bank or trust company, which has paid and charged to the account of a depositor any money on a forged or raised check issued in the name of said depositor, shall be liable to said depositor for the amount paid thereon, unless said depositor shall notify the bank or trust company that the check so paid is forged or raised, either;
"(1) Within one year after notice to said depositor that the vouchers representing payments charged to his account for the period during which such payment was made, are ready for delivery or
"(2) If no such notice has been given to the depositor, then within one year after the return to said depositor of the voucher representing such payment; or
"(3) Within six months after the next succeeding date upon which interest shall have been paid by the bank on said depositor's account, in the case of a savings account.
"The notice to the depositor hereinbefore referred to, shall be given by registered mail with return receipt demanded, to said depositor at his last known address, with postage prepaid."
[2] Section 95.11, Fla. Stat., F.S.A., provides as follows:

"Actions other than those for the recovery of real property can only be commenced as follows: * * *
"(3) Within five years.  An action upon any contract, obligation or liability founded upon an instrument of writing not under seal.
"(4) Within four years.  Any action for relief not specifically provided for in this chapter.
"(5) Within three years.  * * * (e) And an action upon a contract, obligation or liability not founded upon an instrument of writing, including an action for goods, wares and merchandise sold and delivered, and on store accounts."
[3] Chapters 674-676, Fla. Stat., F.S.A.
[4] Section 674.25, Fla. Stat., F.S.A. "Forged signature. Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."
[5] See note [1], supra.
[6] For a number of cases which recognize that the use of the term "forged" check in this statute is limited to forgery of maker's signature, see the cases cited in 50 A.L.R.2d 1126-1130; Beutel's Brannan, Negotiable Instruments, 458,1351 (7th ed. 1948); 5B Michie, Banks and Banking § 283.
[7] Housing Authority of Union City, Etc. v. Commonwealth Trust Co., 25 N.J. 330, 136 A.2d 401; Shattuck v. Guardian Trust Co., 204 N.Y. 200, 97 N.E. 517.
[8] See cases cited in annotation beginning at 50 A.L.R.2d 1115 and 5B Michie, Banks and Banking § 283.
[9] Lewis State Bank v. Raker, 138 Fla. 227, 189 So. 227.
[10] 5B Michie, Banks and Banking, § 284. See cases cited at 7 Am.Jur., Banks §§ 589, 590.
[11] Union Tool Co. v. Farmers' & Merchants' Nat. Bank, 192 Cal. 40, 218 p. 424, 28 A.L.R. 1417; Kansas City Title & Trust Co. v. Fourth Nat. Bank, 135 Kan. 414, 10 P.2d 896, 87 A.L.R. 334; Masonic Benefit Ass'n of Stringer Grand Lodge v. First State Bank, 99 Miss. 610, 55 So. 408; Bruce v. First Nat. Bank of Seattle, 180 Wash. 614, 41 P.2d 779.
[12] Compare City of Miami v. Brooks, Fla., 1954, 70 So.2d 306; Franklin Life Ins. Co. v. Tharpe, 131 Fla. 213, 179 So. 406.
[13] See note [2], supra.
[14] See Ball v. Roney, 112 Fla. 186, 150 So. 240; Gulf Life Ins. Co. v. Hillsborough County, 129 Fla. 98, 176 So. 72.
[15] McCrory Stores Corporation v. Tunnicliffe, 104 Fla. 683, 140 So. 806.