225 So.2d 331 (1969)
Ruth H. CREVISTON, Petitioner,
v.
GENERAL MOTORS CORPORATION and J.W. Whitesides, Respondent.
No. 37657.
Supreme Court of Florida.
July 2, 1969.
Lawrence J. Robinson and David S. Yost, of Cramer, Robinson, Ginsburg & Ross, Sarasota, for petitioner.
Dart, Bell & Dickinson and Millican & Trawick, Sarasota, for respondent.
ERVIN, Chief Justice.
We consider here a petition for conflict certiorari to review the decision of the District Court of Appeal, Second District, reported in 210 So.2d 755.
In February, 1962, Petitioner, Ruth H. Creviston, purchased a new Frigidaire refrigerator which was manufactured by Respondent General Motors Corporation. On December 2, 1966, while Petitioner was opening the refrigerator door its upper hinge came apart. The door fell and injured Petitioner. On April 6, 1967, Petitioner filed a four-count complaint, of which three counts were voluntarily dismissed. Count I was based on breach of implied warranty. On motion by Respondents, the trial judge dismissed Count I because he thought it was barred on its *332 face by the three-year statute of limitations provided in Section 95.11(5) (e), Florida Statutes 1961, F.S.A. In affirming the trial judge, the District Court decided that the instant cause of action for personal injuries accrued when the refrigerator was purchased in 1962. The accident occurred four years and ten months after the purchase of the refrigerator. The District Court of Appeal affirmed, saying:
"* * * We are unable to find any Florida cases touching directly on the limitations of actions based on warranties although certain other personal injury cases are persuasive.
* * * * * *
"We are of the opinion that the statute of limitations in this case is three years, based on Section 95.11(5) (e). An implied warranty is an action founded on contract not in writing and normally on actions on contracts the limitations usually commence to run when the cause of action accrues. Generally the time of the breach of the agreement and not the date of actual damages sustained commences the breach. * * *" (210 So.2d at 756, 757.)
The pertinent issue here to be decided is whether in a personal injury case founded on breach of a products liability warranty the three-year statute of limitations, Section 95.11(5) (e), dealing with unwritten contracts,[1] begins to run from the time the warranty was breached by the sale of a defective product, or whether said statute of limitations begins to run from the time the injured party discovered or should have discovered, the existence of the defect in the product constituting a breach of the warranty agreement.
We have granted conflict certiorari because the decision below appears to directly conflict with certain pronouncements adhered to in City of Miami v. Brooks (Fla. 1954), 70 So.2d 306; Edgerly v. Schuyler (Fla.App. 1959), 113 So.2d 737, and Miami Beach First National Bank v. Edgerly (Fla. 1960), 121 So.2d 417, 82 A.L.R.2d 927.
The facts in City of Miami v. Brooks, supra, are as follows: The appellee, plaintiff below, brought suit for a breach of contract against the City of Miami for personal injuries resulting from an overdose of x-ray radiation received during treatment at appellant's hospital. The x-ray treatment was applied in 1944. The injury developed and first became known in 1949. At the time of the application of the x-ray treatment there was nothing to put the plaintiff on notice of any probable or even possible injury. The City of Miami appealed a judgment for the plaintiff, asserting that plaintiff's claim was barred by the statute of limitations. Our Court held that the statue of limitations did not commence to run until plaintiff was first put on notice that she had sustained an injury or had reason to believe that her right of action had accrued.
The facts in Edgerly v. Schuyler, supra, are as follows: The plaintiff-depositor brought suit against the defendant bank for damages resulting from the bank's payment of depositor's check upon a forged endorsement. The bank set up as an affirmative defense the failure of the depositor to commence the suit for breach of an implied contract until after the running the statute of limitations, Section 95.11(5) (e). The depositor appealed a summary judgment in favor of the bank. On these facts, the District Court of Appeal, Third District, ruled that the applicable statute of limitations begins to run from the discovery of the forgery by the depositor unless it can be demonstrated to the satisfaction *333 of the trier of fact that at an earlier time the depositor would have discovered the forgery if he had used ordinary business care. The determination of the time of the commencement of the running of the statute of limitations was held to be one of fact.
In Miami Beach First National Bank v. Edgerly, supra, the District Court of Appeal, Third District, certified that its decision in Edgerly v. Schuyler, supra, passed upon a question of great public interest. This Court considered the cause on certiorari. The facts are the same as those of Edgerly v. Schuyler, supra, and on these facts this Court affirmed the decision of the District Court of Appeal, holding that the statute of limitations on an action for breach of an implied contract begins to run from the time the breach was, or reasonably should have been discovered.
From the rationale of the three cases discussed above, we conclude in an action on implied warranty for personal injury under the facts of this case, the three-year statute of limitations, F.S. Section 95.11(5) (e), F.S.A., begins to run from the time Petitioner first discovered, or reasonably should have discovered the defect constituting the breach of warranty. We reach this conclusion because an arbitrary determination that a cause of action accrues and the statute runs on a products liability injury from the date of sale appears illogical with respect to a latently defective product where the defect is not known and cannot be known at the time of sale. The purpose served generally by statutes placing a time limit on the right to assert claims is to prevent a stale assertion of such claims after an aggrieved party is placed on notice of an invasion of his legal rights. A blanket stereotype limitation applied as of the date of sale of any particular product can hardly foster the designed purpose of such statutory limitation in those instances where an aggrieved party has no notice of the invasion of his legal rights in the form of the latently defective condition of the product.
Therefore, based on the allegations in Petitioner's complaint that discovery of the defect first occurred on December 2, 1966, the date the refrigerator door fell on Petitioner, causing her injury, we hold the motion dismissing Petitioner's complaint predicated on the running of the three-year statute of limitations was improperly granted.
The above conclusion we think is amply fortified by the reasoning employed by our Court in City of Miami v. Brooks, supra, where we adopted a portion of the opinion of the United States Supreme Court in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252 (1949):
"`If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.
* * * * * *
"`We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purpose of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights. * * * " (Emphasis supplied.) (City of Miami v. Brooks, supra, 70 So.2d at 309.)
This Court in Brooks thereupon concluded:
"* * * In other words, the statute attaches when there has been notice of *334 an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. In the instant case, at the time of the x-ray treatment there was nothing to indicate any injury or to put the plaintiff on notice of such, or that there had been an invasion of her legal rights. It is the testimony of one of the expert witnesses that injury from treatment of this kind may develop anywhere within one to ten years after the treatment, so that the statute must be held to attach when the plaintiff was first put upon notice or had reason to believe that her right of action had accrued. To hold otherwise, under circumstances of this kind, would indeed be a harsh rule and prevent relief to an injured party who was without notice during the statutory period of any negligent act that might cause injury." (City of Miami v. Brooks, supra, 70 So.2d at 309.)
From the standpoint of legal principles, the holdings in the cases above discussed appear to crystallize in favor of application of the blameless ignorance doctrine in those instances where the injured plaintiff was unaware or had no reason to know that an invasion of his legal rights has occurred. In reality, such a doctrine is merely a recognition of the fundamental principle that regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights. Applied particularly in the area of products liability, where a warranty attaches to the sale of a product, the above doctrine vitalizes the concept that the cause of action does not accrue and the statute does not commence to run until the breach of warranty in the form of a defective product is or should be discovered.[2]
In reaching the conclusion here announced, we recognize that in most cases involving a personal injury precipitated by the defective condition of a product, the injury will often coincide with discovery of the defect constituting the breach of warranty. Notwithstanding this observation, we also note the potentiality of instances where an injury precipitated by a defective or malfunctioning product occurs subsequent to the patent or observable existence of the accident producing defect. In such instances, the view here adopted does not in any way preclude relevant factual considerations pertaining to the discoverability of such defects prior to the occurrence of actual injury. Similarly, in the view here adopted, we do not intend thereby to preclude relevant considerations by the jury at trial of questions pertaining to various defenses available to a defendant generally in resisting claims predicated on breach of warranties in the products liability area. For example, wear and tear, coupled with lapse of time and the propensity of the product to degenerate; misuse of the product; intervening cause, and other defenses available in the breach of warranty area (see Frumer and Friedman, 2 Products Liability, § 16.01 [3], [4]) are unaffected by our views herein announced. Our holding is limited solely to the matter of the commencement of the running of the three years statute of limitations in the factual posture of this case and is not otherwise extended. Furthermore, we note specifically this case is not governed by the Uniform Commercial Code and nothing herein is intended to foreshadow related considerations under applicable Code provisions.
The judgment of the District Court of Appeal, Second District, is quashed and the cause remanded with directions that further proceedings be in accordance herewith.
It is so ordered.
DREW, THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.
NOTES
[1] While we accept for purposes of resolving the present question that the warranty here involved is governed by the statute of limitations dealing with actions founded on unwritten contracts, we note the forward trend in the area of products liability cast considerable doubt on the classification of a breach of such a warranty as ex contractu. See Prosser, Torts, § 83 (2d ed. 1955); Lily-Tulip Cup Corp. v. Bernstein, Fla. 1946, 181 So.2d 641; Manheim v. Ford Motor Co., Fla. 1967, 201 So.2d 440.
[2] See Lopucki, Statute of Limitations in Warranty, 21 U.Fla.L.Rev. 236 (1969).