594 So.2d 776 (1992)
John H. FLANAGAN, Jr., Appellant,
v.
WAGNER, NUGENT, JOHNSON, ROTH, ROMANO, ERIKSEN & KUPFER, P.A., f/k/a Cone, Wagner, Nugent, Johnson, Roth & Romano, P.A., al J. Cone and Jfk Medical Center, Inc., Appellees.
No. 91-0305.
District Court of Appeal of Florida, Fourth District.
January 3, 1992.
Rehearing, Rehearing and Certification Denied April 1, 1992.
*777 Stuart H. Sobel, of Sobel & Sobel, P.A., Miami, for appellant.
Eric A. Peterson, of Peterson & Bernard, West Palm Beach, for appellees Wagner, Nugent, Johnson, Roth, Romano, Eriksen & Kupfer, P.A. and Al J. Cone.
David Povich, of Williams & Connolly, Washington, D.C., and James M. McCann, of Mershon, Sawyer, Johnston, Dunwoody & Cole, West Palm Beach, for appellee JFK Medical Center, Inc.
Rehearing, Rehearing En Banc and Certification Denied April 1, 1992.
HERSEY, Judge.
This appeal in an action for defamation raises the question of when the statute of limitations begins to run where the publication is private. JFK Medical Center, Inc., of West Palm Beach (JFK) was in the process of filing a claim with its insurer under a directors' and officers' liability policy for certain fraudulent acts of JFK's directors. As JFK investigated, it came to the conclusion that there had been a separate fraud committed by a construction contractor, appellant John Flanagan. During the course of the claim investigation, JFK's attorney sent a letter to in-house counsel for JFK's insurer. Flanagan alleges that the following excerpt from that letter defames him:
The documents indicate a minimum loss in the years 1984-1987 of approximately $2,000,000. This, however, does not include losses occurring in the construction fraud. ... In order to finalize this figure, we will probably have to subpoena records from John Flanagan, the contractor. [T]his part of the loss will approximate $10,000,000. We do not believe these losses were a part of the conspiracy, but rather were a separate fraud by John Flanagan and other individuals in the hospital.

(Emphasis added.)
This letter was dated February 24, 1988. Flanagan did not learn of the letter and its allegedly defamatory statements until a friend, who had received a copy of the letter anonymously in the mail, showed it to him in late November 1988. On October 31, 1990, Flanagan filed a complaint for defamation against the attorney, his law firm, and JFK Medical Center. The defendants moved to dismiss on the ground that the statute of limitations on an action for defamation is two years. An additional basis for the motion to dismiss was that the defamatory statement was not actionable because it was made by an attorney regarding an insurance claim as a necessary prerequisite to a judicial proceeding, so that the statement was absolutely privileged.
The trial court agreed with the defendants that the action was barred by the statute of limitations, and entered a written order dismissing the complaint.
The statute of limitations applicable to an action for libel or slander is two years. Section 95.031(1), Fla. Stat. (1989). The cause of action for defamation arises "when the last element constituting the cause of action occurs." Section 95.031(1), Fla. Stat. (1989).
Appellees argue, and the trial court held, that the last element occurs upon publication. The case relied upon for this proposition held that a "[c]ause of action in slander accrues at the time of the alleged publication." Gallizzi v. Williams, 218 So.2d 499, 500 (Fla. 2d DCA 1969). See also *778 Franklin Life Ins. Co. v. Tharpe, 131 Fla. 213, 179 So. 406 (1938); Houston v. Florida-Georgia Television Co., 192 So.2d 540 (Fla. 1st DCA 1966). As further support for this position appellee makes reference to specific legislative history and cites to a number of cases from other jurisdictions.
Appellant suggests that the better rule is that the last element occurs and thus the cause of action accrues when the plaintiff knew or through the exercise of reasonable diligence should have known of the invasion of his legal rights. This is the so-called "discovery rule" or the "blameless ignorance doctrine." This position, too, is supported by citation to Florida and foreign authority. More importantly, it appears to have been adopted by the Supreme Court of Florida.
In Creviston v. General Motors Corp., 225 So.2d 331 (Fla. 1969), the plaintiff was injured when the door fell off her refrigerator. Refusing to follow the rule that the statute of limitations began to run on the day the refrigerator was purchased, the court applied the discovery rule in this action for breach of an implied warranty. As authority, the opinion relied upon, inter alia, its earlier decision in City of Miami Beach v. Brooks, 70 So.2d 306 (Fla. 1954). In Brooks, a medical malpractice case, the court held that the statute of limitations commenced to run when the plaintiff knew or should have known that she had sustained an injury or invasion of her legal rights.
The Creviston court expressly adopted the "blameless ignorance" doctrine discussed in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), and was careful to point out that application of the doctrine was not limited to cases involving breach of an implied warranty. The court explained that the doctrine was "merely a recognition of the fundamental principle that regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights." Creviston, 225 So.2d at 334.
Ordinarily the determination of when the plaintiff knew or, with the exercise of reasonable diligence, should have known, of the invasion of his or her rights is a question for the trier of fact rather than one of law. Cowan v. Turchin, 270 So.2d 449 (Fla. 4th DCA 1972) (following and applying Creviston).
In Lund v. Cook, 354 So.2d 940 (Fla. 1st DCA), cert. denied, 360 So.2d 1247 (Fla. 1978), where the cause of action was one for negligence in making a survey and plat, the court held that the cause of action accrued "with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights." Id. at 942 (quoting Creviston).
In the context of an action for conversion, the third district applied Creviston, documenting the demise of the holdings of earlier cases that did not follow the discovery rule. In Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157 (Fla. 3d DCA 1984), the court explained:
While it is true that "mere ignorance of the facts which constitute the cause of action will not postpone the operation of the statute of limitations," Franklin Insurance Co. v. Tharpe, 131 Fla. 213, 214, 179 So. 406, 407 (1938), it is equally true that where the plaintiff's ignorance is blameless, the cause of action will not arise until the plaintiff knows or is chargeable with knowledge of an invasion of his legal right, Miami Beach First National Bank v. Edgerly, 121 So.2d 417 (Fla. 1960) (action against bank for payment on a forged endorsement does not arise until maker receives, or by exercise of reasonable business care would have received, notice that endorsement forged); City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954) (medical malpractice action does not arise until notice of consequences or negligent act); see Franklin Insurance Co. v. Tharpe, 179 So. 406.
Id. at 1162. Accordingly, we follow well-established Florida authority in applying the discovery rule to the facts of the present case.
Earlier we alluded to legislative intent. This reference pertained to recitations in legislative materials to the effect *779 that the statute of limitations in an action for libel or slander commenced to run at the time that the allegedly defamatory statement is made or published. See Staff of Fla.H.R.Comm. on Judiciary, HB 832 (1986) Staff Analysis 2 (rev. May 2, 1986) (Florida State Archives); Staff of Fla. S.Comm. on Judiciary, CS for SB 1239 (1986) Staff Analysis 1 (May 15, 1986) (Florida State Archives). We do not feel compelled to translate these staff observations into Florida law. We interpret them as simply a misunderstanding of what the law was. In addition, the amendment under consideration dealt with a reduction of the limitations period from four to two years, impacting on section 95.11(4)(g), and having no effect on the statutory section dealing with the question of when the limitation period commences to run; that is, section 95.031(1). Accordingly, we find this legislative material legally irrelevant to the issue before us.
Finally, appellees invite us to apply the "right for the wrong reason" analysis of Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1979), in order to affirm the result reached by the trial court. The essence of their argument is that the allegedly defamatory statement was made under circumstances which confer on the publisher of the letter an absolute privilege. We decline their invitation for two reasons. The first is that the trial court has not yet had an opportunity to address and rule upon this issue. The second is that the record is not sufficiently developed to permit us to make a determination as to whether the privilege in question here is absolute rather than limited or qualified, even if we were otherwise inclined to so determine.
Accordingly, we reverse and remand for further appropriate proceedings consistent with this opinion.
REVERSED AND REMANDED.
GLICKSTEIN, C.J., and GUNTHER, J., concur.