629 So.2d 113 (1993)
WAGNER, NUGENT, JOHNSON, ROTH, ROMANO, ERIKSON & KUPFER, P.A., etc., et al., Petitioners,
v.
John H. FLANAGAN, Jr., Respondent.
No. 79828.
Supreme Court of Florida.
November 10, 1993.
Rehearing Denied January 5, 1994.
Mershon, Sawyer, Johnston, Dunwoody & Cole, West Palm Beach, FL, Williams & Connolly, Washington, DC, Peterson & Bernard, and Larry Klein and Jane Kreusler-Walsh, *114 Klein & Walsh, P.A., West Palm Beach, FL, for petitioners.
Stuart H. Sobel, Sobel & Sobel, P.A., Miami, FL, for respondent.
PER CURIAM.
We have for review Flanagan v. Wagner, Nugent, Johnson, Roth, Romano, Eriksen & Kupfer, P.A., 594 So.2d 776 (Fla. 4th DCA 1992), based on conflict with Gallizzi v. Williams, 218 So.2d 499 (Fla.2d DCA 1969). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Flanagan.
When JFK Medical Center of West Palm Beach (JFK) was in the process of filing a claim with its insurer under a directors' liability policy for allegedly fraudulent acts committed by JFK's directors, JFK's lawyer sent a letter to the insurer's lawyer commenting on a separate fraud committed by construction contractor Flanagan:
The documents indicate a minimum loss in the years 1984-1987 of approximately $2,000,000. This, however, does not include losses occurring in the construction fraud... . In order to finalize this figure, we will probably have to subpoena records from John Flanagan, the contractor. [T]his part of the loss will approximate $10,000,000. We do not believe these losses were a part of the conspiracy, but rather were a separate fraud by John Flanagan and other individuals in the hospital.
Flanagan did not learn of the letter, which was dated February 1988, until November 1988, and subsequently filed a complaint for defamation in October 1990 against JFK's lawyer, his law firm, and JFK. The trial court ruled the complaint barred by the two-year statute of limitations contained in section 95.11, Florida Statutes (1987). The district court reversed, holding that the statute of limitations period for defamation does not begin to run until the libel or slander is discovered or reasonably should have been discovered. The court noted conflicting language in Gallizzi, wherein the district court stated that a "[c]ause of action in slander accrues at the time of the alleged publication." 218 So.2d at 500.
Flanagan argues that where the defamation is private, not public, the limitations period should run from the time of discovery, not publication. A publication rule for private defamation, he contends, would be unfair because it would deprive a plaintiff of relief when he or she could not have known of the wrong. Flanagan relies on the following broad language from Creviston v. General Motors Corp., 225 So.2d 331 (Fla. 1969), for support:
From the standpoint of legal principles, the holdings in the cases [from this Court and the United States Supreme Court] above discussed appear to crystallize in favor of the application of the blameless ignorance doctrine in those instances where the injured plaintiff was unaware or had no reason to know that an invasion of his legal rights has occurred. In reality, such a doctrine is merely a recognition of the fundamental principle that regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights.
Id. at 334.
We find Creviston, a breach of implied warranty case, inapplicable to the present case by its own terms:
Our holding is limited solely to the matter of the commencement of the running of the three years statute of limitations in the factual posture of this case and is not otherwise extended.
Id. at 334. We find the present case controlled by the plain language of applicable statutes.
The legislature has established unequivocal guidelines governing the statute of limitations for defamation suits and has decided on a two-year period:
95.11 Limitations other than for the recovery of real property.  Actions other than for recovery of real property shall be commenced as follows:
... .
(4) WITHIN TWO YEARS. 
... .
(g) An action for libel or slander.
*115 Section 95.11, Fla. Stat. (1987). The period begins to run from the time the cause of action accrues:
95.031 Computation of time.  Except as provided .. . elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.
Section 95.031, Fla. Stat. (1987). A cause of action for defamation accrues on publication:
770.07 Cause of action, time of accrual  The cause of action for damages founded upon a single publication or exhibition or utterance ... shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state.
Section 770.07, Fla. Stat. (1987). Although chapter 770 primarily addresses media defendants, we note the chapter is broadly titled Civil Actions for Libel. We hold the above statute applicable to all civil litigants, both public and private, in defamation actions. To rule otherwise would allow potentially endless liability since Florida Statutes contains no statute of repose for this particular tort. We doubt the legislature would have intended this.
Based on the foregoing, we approve Gallizzi, quash Flanagan, and remand for proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., and KOGAN, J., concur with opinions.
SHAW, J., dissents with an opinion.
BARKETT, Chief Justice, concurring.
I concur in the result achieved in this case because I do not believe that the letter in question can possibly be actionable.
KOGAN, Justice, concurring.
While I find Justice Shaw's dissent makes good sense, I see no way around the plain language of section 770.07, Florida Statutes (1987), which obviously contradicts the Restatement of Torts. I therefore concur, though with some regret. I would suggest that the legislature revisit this issue. To my mind, a good alternative to the present scheme would be to include a discovery rule in the accrual statute, but limit the discovery period by a longer statute of repose judged from the date of first publication.
SHAW, Justice, dissenting.
To my mind, the statute of limitations in a defamation action begins to run on discovery  not publication  of the defamatory statement. By adopting the publication rule, the majority has erected yet another inequitable barrier between the courthouse door and injured plaintiff.
The Legislature has established a two-year statute of limitations for defamation.[1] The period begins to run from the time the cause of action accrues.[2] A cause of action accrues when the last element constituting the cause occurs.[3] The Restatement of Torts defines the elements of a cause of action:
§ 558. Elements Stated
To create liability for defamation there must be:
(a) a false and defamatory statement concerning another;
(b) an unprivileged publication to a third party;
(c) fault amounting at least to negligence on the part of the publisher; and
(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
Restatement (Second) of Torts § 558 (1977). The last element, special damages, may be summarized as "damages, either presumed or proved," and includes four classes: nominal, *116 general, special, and emotional or bodily harm or injury.[4]
Thus, under the Legislature's scheme the limitations period begins to run not on publication, but when the plaintiff discovers the defamation, since an integral component of the last element is mental or emotional harm to the plaintiff and this generally requires knowledge, direct or indirect, by the plaintiff of the defamatory information. This conclusion is supported by both caselaw and common sense. Applying the discovery rule to a breach of implied warranty claim in Creviston v. General Motors Corp., 225 So.2d 331 (Fla. 1969), this Court extrapolated broadly from the facts of that case:
[W]e conclude in an action on implied warranty for personal injury under the facts of this case, the three-year statute of limitations ... begins to run from the time Petitioner first discovered, or reasonably should have discovered[,] the defect constituting the breach of warranty. We reach this conclusion because an arbitrary determination that a cause of action accrues and the statute runs on a products liability injury from the date of sale appears illogical with respect to a latently defective product where the defect is not known and cannot be known at the time of sale. The purpose served generally by statutes placing a time limit on the right to assert claims is to prevent a stale assertion of such claims after an aggrieved party is placed on notice of an invasion of his legal rights. A blanket stereotype limitation applied as of the date of sale of any particular product can hardly foster the designed purpose of such statutory limitations in those instances where an aggrieved party has no notice of the invasion of his legal rights in the form of the latently defective condition of the product.
Id. at 333. In concluding, we endorsed the discovery rule as a general principle of law, "regardless of the underlying nature of the cause of action":
From the standpoint of legal principles, the holdings in the cases [from this Court and the United States Supreme Court] above discussed appear to crystallize in favor of the application of the blameless ignorance doctrine in those instances where the injured plaintiff was unaware or had no reason to know that an invasion of his legal rights has occurred. In reality, such a doctrine is merely a recognition of the fundamental principle that regardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights.
Id. at 334. See also City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954) (discovery rule applied to medical malpractice claim).
The discovery rule serves the purpose of the statute of limitations  it bars those who sleep on their rights  and is consistent with principles of basic fairness and common sense, as noted in Creviston. This was further underscored in Caster v. Hennessey, No. 86-5572 (U.S. 11th Cir. Nov. 23, 1987), a federal case decided on state law grounds. There, the plaintiff was discharged from employment and could not obtain another job for years, even though he sent out thousands of applications. He later learned that his former employer had secretly placed a highly unfavorable termination report in his personnel file. The Eleventh Circuit held that *117 Florida's statute of limitations for defamation begins to run on discovery, not publication.
This blameless ignorance doctrine first established in Brooks and then expanded by Creviston applies very neatly to the case at bar. The appellant attempted to ascertain from the people from whom he was seeking employment as to why he was unsuccessful in obtaining a job. However, it was not until the appellee was compelled by court order to turn over Caster's personnel file that the separation report was discovered. How could the appellant have been any more blamelessly ignorant to the contents of the separation report generated by his former employer three and one half months after he was fired? Absent the motion to compel, the appellant would have never known the contents of this allegedly slanderous report. As with the faulty hinge in Creviston and the overdose of x-ray therapy in Brooks, the cause of action was not discoverable at the time of the allegedly injurious act. Appellant cannot be held barred by the statute of limitations when he was unaware of the possible invasion of his legal rights. The Supreme Court of Florida was very clear in Creviston that the limitations period begins to run upon discovery or duty to discover "regardless of the underlying nature of a cause of action... ." Upon application of this principle to this libel and slander cause of action, we hold that the statute of limitations did not begin to run until the appellant discovered the report after the June 3, 1982, granting of the motion to compel.
Id., Slip op. at 8 (footnote and citation omitted).
I note that the statutory provision on which the majority hangs its hat, chapter 770, addresses only libel claims against media  not private  defendants.[5] And while it is logical to provide, as does section 770.07, that a cause of action for defamation against a media defendant accrues on first publication in the state, it makes no sense whatsoever to say the same thing about private defendants. For while constructive knowledge may reasonably be imputed when a statement is broadcast on television or radio or printed in a newspaper, no such knowledge may be reasonably ascribed when the statement is secreted in a private letter or transmitted by individual word of mouth. Finally, even though the Legislature has failed to provide a statute of repose for this particular tort, I would leave this matter up to that body  the Legislature has created statutes of repose for numerous claims and may easily do so here, if that is its intent.
Based on the foregoing, I would hold that for other than media defendants the statute of limitations for defamation begins to run on discovery, not publication, of the defamatory statement.
NOTES
[1] 95.11, Fla. Stat. (1987).
[2] 95.031, Fla. Stat. (1987).
[3] 95.031(1), Fla. Stat. (1987).
[4] The Restatement (Second) of Torts (1977) provides:

620 Nominal Damages
One who is liable for a slander actionable per se or for a libel is liable for at least nominal damages.
... .
621 General Damages
One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed.
... .
622 Special Harm as Affecting the Measure of Recovery
One who is liable for either a slander actionable per se or a libel is also liable for any special harm legally caused by the defamatory publication.
... .
623 Emotional Distress and Resulting Bodily Harm
One who is liable to another for a libel or slander is liable also for emotional distress and bodily harm that is proved to have been caused by the defamatory publication.
[5] Virtually every statutory section within the chapter contains a direct or indirect reference to the media, and none to private defendants.