748 So.2d 296 (1999)
Michael A. MUSTO, Appellant,
v.
BELL SOUTH TELECOMMUNICATIONS CORPORATION, a Georgia corporation, and Recovery Specialists, Inc., Appellees.
No. 98-1729.
District Court of Appeal of Florida, Fourth District.
July 14, 1999.
*297 Donald P. Kohl of Donald P. Kohl, P.A., West Palm Beach, for appellant.
Michele L. McNichol of Katz, Barron, Squitero, Faust & Berman, P.A., Miami, for appellees.
POLEN, J.
Michael Musto appeals a final summary judgment entered in favor of Bell South Telecommunications Corporation (Bell South) and Recovery Specialist, Inc. (Recovery), in which the trial court determined Musto's credit defamation action was barred by the two-year statute of limitations contained in section 95.11(4)(g), Florida Statutes (1997).[1] We reverse.
On March 6, 1997, Musto filed suit against Bell South and Recovery alleging Recovery, acting as Bell South's agent, reported Musto to Equifax Credit Information Services based on Musto's failure to reimburse Bell South for damages caused by Musto's trucking concern. Musto alleged Recovery first reported the overdue payment to Equifax in August of 1993. Musto was denied credit on several occasions beginning in 1996, and learned of a problem with his credit in October of 1996. He did not learn of the Equifax credit report until January of 1997, when another credit report was issued to Springer Tire Co.
Bell South and Recovery amended their answer to allege Musto's action was barred by the two-year statute of limitations. Musto responded by asserting the defamatory remarks were reuttered by Bell South's agent as recently as January of 1997, within three months of the date Musto's complaint was filed, when Musto's credit report was provided to Springer Tire. Bell South and Recovery moved for summary judgment on their statute of limitations defense, and the court granted summary judgment relying on Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan, 629 So.2d 113 (Fla.1993), which held a cause of action for defamation founded on a single publication accrues on publication rather than discovery of the defamation.
This case presents an issue of first impression in Florida: Whether the "single publication rule" at issue in Wagner, Nugent or the "multiple publication rule" should be applied to determine when the statute of limitations begins to run on the common law tort of credit slander. Generally, "each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." Restatement (Second) of Torts § 577A cmt. a (1977). This general rule is referred to as the "multiple publication rule." An exception to this rule is the "single publication rule," which is applied where the same communication is heard at the same time by two or more persons. Id. at cmt. b. The "single publication rule" treats the communication to the entire group as one publication giving rise to only one cause of action "[i]n order to avoid multiplicity of actions and undue harassment of the defendant by repeated suits by new individuals, as well as excessive damages *298 that might have been recovered in numerous separate suits...." Id.
Musto argues the trial court erred in applying the single publication rule and determining the two-year statute of limitations for defamation barred his action, because a new publication occurred every time Musto's credit report was provided to a potential creditor. He argues liability for credit defamation begins anew and a new cause of action accrues each time a credit report is disseminated to a potential creditor. We agree.
The instant case is analogous to cases where a litigant alleges credit slander under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. Several courts, including this court, have held the two-year statute of limitations under the Fair Credit Reporting Act (FCRA) begins to run when an inaccurate credit report is issued, rather than when the plaintiff discovers the credit report has been improperly issued. Lamothe v. Equifax Credit Info. Serv., Inc., 718 So.2d 326 (Fla. 4th DCA 1998) (citing Clark v. State Farm Fire & Cas. Ins. Co., 54 F.3d 669 (10th Cir.1995), which implicitly recognized liability arises under the FCRA and the statute of limitations begins to run when an improper credit report issues); Hyde v. Hibernia Nat'l Bank, 861 F.2d 446 (5th Cir.1988) (recognizing liability arises under FCRA when credit is denied to consumer because that is date on which injury is inflicted); Lawhorn v. Trans Union Credit Info. Corp., 515 F.Supp. 19 (E.D.Mo.1981) (determining liability arises when credit reporting agency's practices lead to the preparation of an erroneous or incomplete consumer report); Wilson v. Porter, Wright, Morris & Arthur, 921 F.Supp. 758 (S.D.Fla.1995) (holding two-year statute of limitations under FCRA began to run when credit reports were issued).
The "multiple publication rule" has also been applied by a California Appellate Court to determine when the statute of limitations begins to run on a common law cause of action for credit slander or defamation. In Schneider v. United Airlines, Inc., 208 Cal.App.3d 71, 256 Cal.Rptr. 71 (1989) the court concluded a person defamed by issuance of an incorrect credit report suffered injury each time the defamatory matter was published or republished, and therefore a separate cause of action accrued on each publication. Id. at 75, 256 Cal.Rptr. 71. The court determined the Uniform Single Publication Act was inapplicable because the protection of the Act was not extended to situations where the defendant republished material knowing the matter was allegedly libelous.
In keeping with the above-cited decision, we conclude the multiple publication rule should be applied to determine when the statute of limitations begins to run on the common law tort of credit slander. When a credit report is issued in confidence to only those people possessing the appropriate credentials to gain access to such reports, the plaintiff may not learn of the dissemination of the inaccurate reports until well after the initial inaccurate report issues. Also, the rationale underlying the single publication rule of avoiding a vast multiplicity of lawsuits that would result from defamatory statements contained in a mass publication such as a newspaper or magazine, is not a concern in a credit slander case.
The trial court relied on Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan, 629 So.2d 113 (Fla.1993). That case concerned a single private defamatory statement and interpretation of section 770.07, Florida Statutes (1987), which sets the time of accrual of a cause of action "founded upon a single publication or exhibition or utterance." Wagner, Nugent, 629 So.2d at 115. The Wagner, Nugent court held section 770.07 applied to all civil litigants and not just media defendants, in part based on a concern that to rule otherwise "would allow potentially endless liability." Id., Wagner, Nugent is distinguishable not only because the instant case does not concern a single *299 defamatory statement, but also because, as noted above, the "endless liability" envisioned by the Wagner, Nugent court is simply not a concern where no mass publication or potentially endless repetition of the defamatory statement is likely to occur. In the case of credit reports it is more likely that only a handful of the inaccurate credit reports will issue, and only to those potential creditors in a position to secure such a report.
In summary, we join those jurisdictions which have held the two-year statute of limitations in credit slander cases begins to run anew on each republication of the allegedly slanderous credit report. Musto filed suit within two years of the January 1997, credit report issuance, thus his cause of action is not barred by the statute of limitations.
REVERSED and REMANDED.
DELL and STEVENSON, JJ., concur.
NOTES
[1] In Caldwell v. Personal Finance Co., 46 So.2d 726 (Fla.1950) the court recognized slander of credit as a cause of action established on proof the defendant finance company willfully and maliciously made a false statement to another finance company regarding the plaintiff's indebtedness, which statement was known by the defendant to be false when made, and was made with the intent of preventing the plaintiff from procuring credit. Id. at 727.