[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10456
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-63035-BB


ERIC WATKINS,

Plaintiff-Appellant,

versus

SERGEANT M. BIGWOOD,
OFFICER T. YOPPA,
#353,
OFFICER SAMUEL RAMOS,
TANIKA BECKFORD,
JERMAINE A. JACKSON, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 11, 2019)

Before WILSON, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Eric Watkins, a non-prisoner litigant proceeding pro se and in forma pauperis, appeals the dismissal of his civil action brought under 42 U.S.C. § 1983 and Florida law.  The district court -- pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) -- dismissed sua sponte Plaintiff's complaint for failure to state a claim.  Reversible error has been shown; we affirm the judgment in part and vacate in part and remand the case for further proceedings.

We review de novo the district court's dismissal under section 1915(e)(2)(B)(ii), accepting the allegations in the complaint as true.  Douglas v. Yates, 535 F.3d 1316, 1319-20 (11th Cir. 2008).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  We construe liberally pro se pleadings.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

I.  Background

Plaintiff's complaint presents these facts, viewed in the light most favorable to Plaintiff.  On the morning of 15 December 2014, Plaintiff -- who was homeless and living out of his car -- was in the parking lot of a public park in Florida. Plaintiff was sitting outside of his car, getting ready to prepare his breakfast, and was singing an "anti-gay song."[1]  Plaintiff says he was sitting "more than 60 feet away" from the walkway that was being used by several people to walk and to exercise that morning.

Two joggers -- Tanika Beckford and Jermaine Jackson -- became offended by Plaintiff's singing.  Jackson cursed at Plaintiff and asked whether Plaintiff was talking to him.  Plaintiff ignored Jackson and continued singing.  Jackson then attempted physically to attack Plaintiff but was restrained by Beckford.  Plaintiff continued singing as Beckford and Jackson walked away, still cursing at Plaintiff.

Sometime later, Lauderhill Police Department Officers Ramos and Manchula[2] arrived on the scene, followed by Sergeant Bigwood.  Sergeant Bigwood told Plaintiff that Beckford and Jackson had complained that Plaintiff had

---

[1] Plaintiff says he was singing a published and recorded song, "Boom Bye," by reggae artist Buju Banton, the lyrics of which include the terms "faggot" and "batty boy."  The song's lyrics also include references to shooting homosexuals and setting them on fire.

[2] Officer Manchula is not named as a defendant in this case.

3

been making anti-gay slurs while waving a knife in his hands.  Plaintiff told Sergeant Bigwood that he had been singing an anti-gay song that had upset the two joggers.  Then, when Plaintiff ignored the joggers and continued singing, Jackson tried to "aggressively approach" Plaintiff and was stopped by Beckford.  Plaintiff also told Sergeant Bigwood that he lived out of his car and kept two knives in his car for preparing meals.  But Plaintiff stated that he had not taken his knives out of his car that morning.

Sergeant Bigwood then spoke with Jackson and Beckford.  Sergeant Bigwood also spoke with Officer Manchula, who had had some previous encounter with Plaintiff at another park on 17 April 2014 (roughly 8 months earlier).  Sergeant Bigwood then told Plaintiff that -- because of Plaintiff's "constant singing," the complaint made by Beckford and Jackson, and the 17 April 2014 incident -- Sergeant Bigwood believed that Plaintiff needed a mental health examination.  Then, Plaintiff refused to go voluntarily to a mental health facility, Sergeant Bigwood ordered Officer Ramos and Officer Yopps to arrest Plaintiff pursuant to Florida's Baker Act, Fla. Stat. § 394.463.  Plaintiff was seized.  Plaintiff was released from the mental health facility three or four days later.

4

According to the complaint, in a supplemental report,[3] Sergeant Bigwood described Plaintiff's behavior as varying "from calm to angry without warning." Plaintiff also expressed to Sergeant Bigwood his concerns that "random citizens" and the police were conspiring against him. Sergeant Bigwood also said that Plaintiff had displayed similar behavior during an earlier police interaction on 17 April 2014, when a park manager reported that Plaintiff was harassing joggers and shouting anti-gay slurs and acting aggressively.

In his complaint, Plaintiff denies flatly that he acted in a way that was loud, angry, rude, or combative. Plaintiff also denies that he waved a knife or acted aggressively toward Beckford or Jackson. Plaintiff says he -- before his arrest -- gave Sergeant Bigwood "concrete reasons for his conspiracy claim," including that the officers retaliated against Plaintiff because Plaintiff had filed other lawsuits against officers with the Lauderhill Police Department, including Officer Manchula.

On 12 December 2018, Plaintiff filed this civil action against Sergeant Bigwood, Officer Yopps, and Officer Ramos, in their official and individual

---

[3] Under the Baker Act, an officer who initiates an involuntary mental health examination must "execute a written report detailing the circumstances under which the person was taken into custody." Fla. Stat. § 394.463(2)(1)(2).

5

capacities (collectively, "Defendant Officers"), and against Beckford and Jackson.[4]

Plaintiff asserted claims against Defendant Officers for false arrest in violation of

Plaintiff's First and Fourth Amendment rights.  Plaintiff also asserted claims for

defamation against Sergeant Bigwood, Beckford, and Jackson.

Without hearing from Defendants, the district court -- looking at the

complaint -- dismissed Plaintiff's complaint for failure to state a claim.  The

district court determined that Plaintiff had failed to allege facts sufficient to state a

claim under the First and Fourth Amendments and that Defendant Officers are

entitled to qualified immunity.  The district court also concluded that Plaintiff's

claims for defamation are barred by the statute of limitations.  This appeal

followed.

II.  Discussion

A.  *False Arrest & Probable Cause*

Plaintiff contends he was detained involuntarily under the Baker Act without

probable cause and in retaliation for his singing, in violation of the First and Fourth

---

[4] Plaintiff also named as a defendant the Lauderhill Police Department.  Plaintiff, however, has alleged no facts about the Department and has asserted no claims against the Department.  We thus affirm the dismissal of Plaintiff's complaint against the Department.

Amendments.  The district court ruled that Plaintiff failed to state a plausible claim for relief.

"[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest" under both the First and Fourth Amendments.  Gates v. Khokhar, 884 F.3d 1290, 1297-98 (11th Cir. 2018). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  Id. at 1298.  Even absent actual probable cause, a claim for false arrest is subject to dismissal if the police officer had "'arguable' probable cause to arrest the plaintiff."  Id.  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest."  Id. (alteration omitted).  "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern."  Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010).

Under Florida's Baker Act, a person may be subjected involuntarily to a mental health examination if "[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior."  Fla. Stat. § 394.463(1)(b)(2)

7

(emphasis added).  Police officers "shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person" to an appropriate mental health facility for examination.  Id. § 394.463(2)(a)(2).

For Plaintiff to be detained lawfully under the Baker Act, probable cause must have existed -- evidenced by Plaintiff's recent behavior -- to believe that a "substantial likelihood" existed that Plaintiff would cause "serious bodily harm" to himself or to others in the near future.  This standard is a high one:  for example, a reasonable belief about "some likelihood," "might cause" "some kind of bodily harm," "at some point in the future" is not good enough for probable cause to deprive a person of their freedom.

Under Plaintiff's version of the facts -- which we now must accept as true and must construe in Plaintiff's favor at this early stage of the proceedings -- Plaintiff remained at all pertinent times near his car, which was more than 60 feet away from the area where people were walking and jogging.  Plaintiff denies flatly that he acted in an aggressive or hostile manner either toward Beckman and Jackson or toward Defendant Officers.  Plaintiff also denies flatly ever holding or waving a knife on the pertinent day.  To the extent there existed a risk of a physical altercation, Plaintiff says that Jackson was the aggressor and that Plaintiff simply ignored Jackson.

Also according to the complaint, the officers saw nothing to the contrary on the day of the arrest; Plaintiff says the officers claim that they saw him have moments of anger after they confronted him, but he denies that. On top of that, the event at another park about 8 months earlier is not referred to as one involving actual violence -- even IF we accept that an older event that occurred 8 months previously might be evidence of "recent behavior" for the Baker Act.

Based on the limited record before us on appeal, an objective officer could not have concluded reasonably that a "substantial likelihood" existed that Plaintiff would soon "cause serious bodily harm" to himself or to others. Nor can we say that Plaintiff's version of the facts is so implausible that he can state no claim for relief.

Because Plaintiff has alleged sufficient facts from which we may infer, for now at least, that he was detained under the Baker Act without probable cause or even arguable probable cause, the district court erred in dismissing Plaintiff's claim under the Fourth Amendment. We must now also consider whether Plaintiff has stated sufficient facts to avoid dismissal of his First Amendment claim.

*B. First Amendment*

To state a claim for retaliation under the First Amendment, a plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a causal connection between the adverse conduct and the protected speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. at 1254.

Under the circumstances alleged by Plaintiff, Plaintiff's singing clearly constituted protected speech. The "most basic" principle underlying the First Amendment's right to free speech is that the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Brown v. Entm't Merchs. Ass'n, 564 U.S. 786, 790-91 (2011). The Supreme Court has recognized few exceptions to this broad protection only for "well-defined and narrowly limited classes of speech," including obscenity (i.e., sexual content), incitement of violence, and fighting words. Id. at 791.

The lyrics of the anti-gay song involved in this case -- as distasteful and offensive as they likely are to many people -- seem to fall within no exception to the First Amendment's protection. Although the song included references to

10

violence, nothing in the assumed facts establishes that Plaintiff was seeking to or was likely to incite imminent violence toward homosexuals.  See Brandenburg v. Ohio, 395 U.S. 444, 448 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). Nor did the song – objectively viewed in the context of Plaintiff's version of the facts – fit the narrow constitutional exception for "fighting words":  His merely singing in an out-of-doors, public place, a recognized song that has been available to the public to hear otherwise in a variety of ways, more than 60 feet away from the pertinent walkway for passersby, and without addressing any particular person would be protected speech.  For background, see Cohen v. Cal., 403 U.S. 15, 20 (1971) (describing "fighting words" as "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction"; and concluding that the words "Fuck the Draft" written on a jacket constituted no "fighting words" in part because the words were "clearly not 'directed to the person of the hearer.'").

About the second element, we have no trouble concluding that being taken into custody for an involuntary mental examination is the kind of conduct that would deter a person of ordinary firmness from exercising his rights under the First

11

Amendment.  (The practice of treating people who hold unpopular views as mentally ill is not uncommon in this world and can readily be frightening.) Plaintiff has also alleged sufficient facts from which a factfinder could infer a causal connection between Plaintiff's singing and his detention.  Among the reasons Sergeant Bigwood gave for determining that Plaintiff needed a mental examination included Plaintiff's "constant singing of the anti-gay song in parks" and Officer Manchula's previous encounter with Plaintiff on 17 April 2014: an incident that also involved Plaintiff's singing of an anti-gay song.  Plaintiff has thus alleged sufficient facts to state a plausible claim for violation of his clear rights under the First Amendment.

## C.  Defamation

Plaintiff's claims for defamation are subject to Florida's two-year statute of limitations.  See Fla. Stat. § 95.11(4)(g).  The purportedly defamatory statements made about Plaintiff by Sergeant Bigwood, Beckford, and Jackson were made on or around 15 December 2014.[5]  Plaintiff first asserted his claims for defamation in

---

[5] Plaintiff's defamation claim against Beckford and Jackson is based on purportedly false statements Beckford and Jackson made to officers on 15 December that resulted in Plaintiff being "Baker Acted."  Plaintiff also asserts that Sergeant Bigwood is liable for defamation based on false statements made about Plaintiff in Sergeant Bigwood's supplemental report.

December 2018, well after the expiration of the two-year limitations period. The district court, thus, dismissed properly Plaintiff's defamation claims as time-barred.

That the complained-of defamatory statements were published in a police report and remain publicly available does nothing to toll the limitations period. Under Florida law, a cause of action for defamation based on a single publication, exhibition, or utterance accrues on the date of publication. Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan, 629 So. 2d 113, 115 (Fla. 1993) (citing Fla. Stat. § 770.07).

We affirm the district court's dismissal of Plaintiff's claims for defamation and the dismissal of the Lauderhill Police Department. We vacate the district court's dismissal of Plaintiff's claims against Defendant Officers for violation of the First and Fourth Amendments and remand for further proceedings. We make no determination about the ultimate merit of Plaintiff's claims or whether Defendant Officers may be entitled to a judgment in their favor on a fuller record.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.